SULLIVAN, GDN., APPELLANT, *v.* WILKOFF, EXRX., APPELLEE.

(Decided June 16, 1939.)

*Messrs. Carlyle & Carlyle,* for appellant.

*Mr. Harry T. Rapport* and *Messrs. Henderson & Ranz,* for appellee.

NICHOLS, P. J. Robert E. Sullivan, guardian of his minor ward, commenced his action in the Court of Common Pleas of Mahoning county on behalf of his ward to recover on an alleged contract between defendant's decedent, in his life time, and the mother of plaintiff's ward.

The cause came on for trial to a jury, and at the conclusion of the opening statement of counsel for plaintiff a demurrer was interposed thereto by defendant and motion made for a directed verdict. The court sustained the demurrer and directed a verdict for defendant upon grounds that the contract was illegal, unlawful, against public policy and void.

The cause is in this court upon appeal on questions

of law by the guardian, the sole question for determination here being whether the trial court erred in sustaining the demurrer to the opening statement of plaintiff's counsel and in directing a verdict for the defendant.

The bill of exceptions contains the opening statement of counsel for plaintiff in full, but boiled down to ultimate facts this statement alleges that defendant's decedent in his lifetime had illicit sexual relations over a period of years with a young girl stenographer in his employ, it being claimed that the employer, who was advanced in years, desired to have a child by this girl; that after the illicit relationship had been carried on for a number of years the girl made known to her employer that she had met a man who proposed marriage to her, and that her employer induced her to marry this man so that she would be protected, so far as the public was concerned; that after the marriage the illicit relationship continued and she became pregnant with child by her former employer; that after the child was born the husband learned of the illicit relationship between his wife and her former employer and brought an action against the former employer in Trumbull county, Ohio, for alienation of his wife's affections, claiming damages in the sum of $150,000; that the former employer called in one James, his confidential friend and agent, and induced James to talk with the mother of the plaintiff's ward as to the attitude or position she would take in connection with her husband's suit against him; that James was instructed by the former employer to say to her:

"If she would remain neutral, not aid in the preparation of this case, or assist in this suit brought by her husband against him, that he would create a trust fund in the amount of $25,000 for the care, maintenance and education of that little girl, and she agreed that so far as she was concerned, she would not partici-

pate in any way in that deal or in that law suit that was pending in Warren.''

It was further stated that when the husband's case against the former employer for $150,000 came on for trial in Warren, the former employer paid the husband a sum of money to drop the case against him, and gave the wife some money in cash to get her name on a paper, but that the agreement made between the wife and James, as the agent of the former employer with reference to creating a trust fund in the amount of $25,000 for the care, maintenance and education of the child was to be performed within thirty days from that date.

It is further alleged that the former employer sought to have James appointed guardian for the child or trustee of the money to take care of the little girl, but that James did not want to act; that time went on and the former employer died without making any provision whatsoever for his child, and it is upon the contract made by defendant's decedent, through his agent James, with the mother of the child that the present action is brought, it being conceded that the child was conceived and born during the marriage relationship existing between the husband and wife.

After the demurrer to this opening statement of counsel for plaintiff was made, the trial court indicated that it was its duty to sustain the demurrer, but before sustaining the same and directing a verdict the court asked counsel whether they wanted to enlarge upon their opening statement or do anything further in the case, whereupon counsel for plaintiff made the further statement in the presence of the jury:

"We expect to prove that one of the considerations for this agreement was the forbearance or the promise on the part of the mother of the child to the agent of the decedent, that she would not prosecute a suit in behalf of the child, in consideration of which, the de-

cedent was to pay—set up a trust fund in the amount of $25,000; and I should like further to say that the proof will show that at the time the contract was entered into between the agent of defendant and the mother of the child, for the benefit of the child, the husband and the mother of the child, were separated, were living separate and apart, and that an action for divorce was then pending by the husband, against the wife, the mother of the child.''

It was further stated into the record by counsel for defendant that, ''we will not raise any question, in any further proceeding of this court, or any appellate court, of any deficiency in the statement in the respects of not claiming that a claim was filed with the executor and payment of the claim disallowed, and that the claim was presented within the statutory period and suit was started following denial.''

It will be seen that two considerations are alleged in support of the contract sued upon in this action; first, that the mother of the child who would be a material witness in the action brought by her husband against her former employer for alienation of affections, would remain ''neutral'' in that action, ''not assist or counsel the lawyers who then represented her husband concerning facts in the trial of the case * * * not aid in the preparation of the case, or assist in this suit brought by her husband against him * * * would not participate in any way in that deal or in that law suit that was pending in Warren''; and second, the forbearance or the promise on the part of the mother to the agent of the decedent, ''that she would not prosecute a suit in behalf of the child.''

In determining whether the trial court erred in sustaining a demurrer to the opening statement of plaintiff and in directing a verdict for the defendant, it is required that the construction of this statement most favorable to the plaintiff must be given, and if any valid consideration for the contract sued upon has

been set forth in this statement which is severable from any other consideration which may be against public policy, the cause should have been submitted to the jury under proper instructions by the trial court. In passing upon this demurrer and motion for directed verdict, the trial court was likewise required to consider as true the material facts stated. It was not necessary in the opening statement of plaintiff to deny or state facts countervailing merely defensive matter in the answer of defendant.

Giving such favorable consideration to the opening statement of counsel, it seems clear that that part of the consideration for the contract wherein the mother of plaintiff's ward agreed to remain "neutral, * * * not assist or counsel the lawyers who then represented her husband concerning facts in the trial of" the alienation action in Trumbull county, or "remain neutral, not aid in the preparation of the case, or assist in this suit brought by her husband against him," is against public policy and void as being an agreement upon the part of the mother to obstruct, impede, and interfere with the administration of public justice.

"It is an established general principle that contracts having for their subject-matter any interference with the due enforcement of the laws are against public policy, and are therefore void. The law guards with jealousy every avenue to its courts of justice, and strikes down everything in the shape of a contract which may afford a temptation to interfere with its due administration." 6 Ruling Case Law, 757, Section 165.

What interpretation can reasonably be placed upon this agreement upon the part of the mother of the child other than that she would refuse to become a witness in the action brought by her husband for alienation of affections or, at least, would refuse to counsel her husband's attorneys with reference to facts within her knowledge, material to his cause of action? If by re-

maining "neutral" it was intended that she should do no more than become a truthful, disinterested witness in the case, her promise so to do would be no consideration for the contract, as this she was in law bound to do without consideration. If by remaining "neutral" it should be interpreted she was not to give true testimony as a witness in the case but would remain silent and refuse to testify, it could not be held otherwise than that the agreement was to impede the administration of justice.

If it be conceded that as the wife of plaintiff in the alienation action, the mother of the child had no duty to assist her husband's counsel in the preparation of that case or counsel his lawyers concerning the facts involved therein, nevertheless, her refusal to divulge material facts to her husband's counsel has for its underlying purpose and objective the suppression of evidence, and its tendency is to work a denial of due process of law.

"All agreements to pay money to stifle or suppress evidence, or to give evidence in favor of one side only, or not to appear as a witness in a civil suit are absolutely null and void, as contracts obstructing or interfering with the administration of public justice, and as being contrary to the public policy of the law." 6 Ruling Case Law, 755, Section 162.

Fairly interpreted the effect of the agreement of the mother of the child to remain "neutral" was to suppress testimony that was competent and relevant in the judicial investigation involved in the action of her husband against defendant's decedent, and it is our conclusion that this portion of the agreement was one tending to obstruct the due course of justice and, therefore, invalid.

Was there any suit which the mother of the child could prosecute on behalf of plaintiff's ward which would constitute consideration for an agreement upon

the part of the reputed father to pay her, or to set up a trust fund for the child in the sum of $25,000? At the time plaintiff's ward was conceived, as well as when the child was born, the mother of the child was the lawful wife of the man her employer had induced her to marry and, under the facts alleged, this child beyond question is the legitimate child of the mother and her husband and being the legitimate child of the mother and her husband, it cannot be the illegitimate child of any other person.

Except by agreement founded upon either a good or valuable consideration, the only cause of action provided by the laws of Ohio whereby a mother may institute proceedings against the father of her illegitimate child is provided in the bastardy statutes, Section 12110 *et seq.*, General Code. The action may be instituted only by "an unmarried woman, who has been delivered of or is pregnant with a bastard child." These sections of the General Code, as they existed at the time it is alleged the agreement was made between the mother of the child and defendant's decedent for the creation of the trust fund for the benefit of plaintiff's ward, had for their purpose but two objectives; first, to determine whether the defendant was the reputed father of plaintiff's illegitimate child, and second, to provide for the payment to the mother of such sum as she may agree or the court may find to be necessary for *her* support, maintenance and necessary expenses, caused by pregnancy and childbirth, together with costs of prosecution.

At the time of the alleged contract sued upon the matter of compelling the person adjudged to be the reputed father of an illegitimate child of an unmarried woman, to support the child was left to the criminal statutes of the state and, of course, any agreement of plaintiff that a criminal charge should not be instituted against the father of an illegitimate child would be null and void as against public policy. At the time

of the alleged agreement it was not even provided by the General Code that the mother and the reputed father might, with the sanction and approval of the court, enter into a binding agreement for the support of the illegitimate child. Previous to 1923 the provisions of the code relating to bastardy provided that the accused might compromise with the complainant upon his giving bond to the state to be approved by the court, conditioned to save any county, township or municipal corporation within the state free from all charges for the maintenance of the bastard child, and further provided that the accused when adjudged to be the reputed father of the bastard child should stand charged with *its maintenance* in such sum as the court orders and be required to give security to perform such order, and in default that he be committed to jail.

Under the form of the statute prior to 1923, it was held by the Supreme Court in the case of *Haworth* v. *Gill,* 30 Ohio St., 627, as follows:

"Proceedings in bastardy cannot be maintained on complaint of the mother, under the act of April 3, 1873 (70 Ohio Laws, 111; 4 Sayler 2929; Sec. 5614 Rev. Stat.), 'for the maintenance and support of illegitimate children,' when the child in question was begotten and born during the lawful wedlock."

In the opinion the court states the purpose of the act as follows:

"It was intended to provide for the support and maintenance of an unfortunate class of children, whose condition of illegitimacy would be apparent and unquestionable, by reason of their being begotten and born out of wedlock. The statute authorizes the complaint to be made either during pregnancy or after delivery. If made during pregnancy, it is certain that the pregnancy alleged must be that of an *unmarried* woman, and if not made till after delivery, it is equally certain that the complainant must still continue to be *unmarried.* But no complaint could have been made

in this case either during pregnancy, or for eight months after delivery. The child was, during all this time, the innocent and honest child of a married woman; and in any proceeding under this act, would have been conclusively presumed to be legitimate.''

In *Miller* v. *Anderson,* 43 Ohio St., 473, 3 N. E., 605, the court quotes with approval from the case of *Haworth* v. *Gill, supra,* but limits the rule of conclusive presumption of legitimacy to proceedings under the bastardy statute, and holds it has no relation to actions where question of heirship and inheritance are involved.

The action of the guardian to enforce the alleged contract made for the benefit of the ward is not an action where questions of heirship and inheritance are involved.

It is quite clear, we think, that independent of contract the mother of the child had no civil cause of action against defendant's decedent which could constitute a consideration for the alleged contract sued upon in this action, and any agreement upon her part to squelch a criminal action against him being against public policy and void, it follows that the trial court was not in error in sustaining the demurrer to plaintiff's opening statement and in directing the jury to return a verdict for the defendant, neither of the alleged considerations being sufficient in law to support the contract sued upon.

In view of our conclusions in the matter, it is unnecessary to consider the question whether the contract sued upon can be sustained if but one of the considerations is illegal and void because against public policy, but we may respectfully refer counsel to the case of *Widoe* v. *Webb,* 20 Ohio St., 431, 5 Am. Rep., 664, wherein it is held that when, for a legal consideration, a party undertakes to do several distinct acts, some of which are lawful, the contract is good for as much

as is lawful, and void for the residue. Whenever the unlawful part of the contract can be separated from the rest, it will be rejected, and the remainder established. But this can not be done when one of two or more considerations is unlawful, whether the promise be to do one lawful act or two or more acts, part of which are unlawful, because the whole consideration is the basis of the whole promise.

In *Black* v. *Kuhlman,* 30 Ohio St., 196, Judge Scott comments upon the case of *Widoe* v. *Webb, supra,* and says:

"In that case, a part of the consideration was *illegal,* and it was held *for that reason* that no recovery could be had on the note."

In *Suesskind* v. *Wilson,* 124 Ohio St., 54, 176 N. E., 889, it is held:

"Where an agreement founded on a legal consideration contains several promises, or a promise to do several things, and a part only of the things to be done are illegal, the promises which can be separated, or the promise, so far as it can be separated, from the illegality may be valid."

In *Producers' Assn.* v. *Milk Co.,* 129 Ohio St., 159, 194 N. E., 16, the court recognizes that recovery may be had for an amount due under a contract based upon a valid consideration although the other part which is based upon an illegal and void consideration is not recoverable, provided the amount accruing while the contract is valid is clearly distinguishable from the amount accruing while the contract was invalid.

In the case under consideration here, even if it should be determined that one portion of the consideration was illegal and the other legal, there is no way in which the legal can be distinguished from the illegal portion of the consideration which is against public policy and void, and the whole contract must fall. But we do not mean to say that the second portion of the consideration mentioned in the opening statement

of counsel for plaintiff is sufficient to constitute a good consideration or any consideration for the alleged contract sued upon.

For the reasons herein set forth, the judgment of the Common Pleas Court is affirmed.

*Judgment affirmed.*

CARTER and PHILLIPS, JJ., concur.