**Dr. Finn F. L'ORANGE, Plaintiff-Appellant,**

v.

**The MEDICAL PROTECTIVE COMPANY, Defendant-Appellee.**

**No. 17605.**

United States Court of Appeals
Sixth Circuit.

May 2, 1968.

Theodore R. Cubbison, Youngstown, Ohio, for appellant.

George I. Meisel, Cleveland, Ohio, for appellee, Squire, Sanders & Dempsey, Cleveland, Ohio, on the brief.

Before WEICK, Chief Judge, and PHILLIPS and CELEBREZZE, Circuit Judges.

PHILLIPS, Circuit Judge.

Appellant is a dentist practicing his profession in Cleveland, Ohio. For more than a quarter of a century he carried a policy of medical malpractice insurance with the appellee insurance company. This policy was purchased in 1938 and had been renewed each year.

The insurance company cancelled the policy in 1965 after appellant had testified under subpoena in a malpractice suit resulting in a $25,000 verdict against another dentist who practiced in Youngstown, Ohio. The Youngstown dentist also was covered by a policy of medical malpractice insurance issued by the appellee insurance company. Appellant's insurance policy was cancelled shortly after the return of the verdict of the jury and while a motion for a new trial was pending in the Youngstown suit.

The cancellation of this insurance coverage gives rise to the present action for breach of contract. The question presented on this appeal is whether the use of a contractual power of cancellation for the purpose of intimidating a witness in a lawsuit contravenes public policy, and if so, does the insurer's cancellation for such a purpose breach the contract.

Jurisdiction is based on diversity of citizenship. Ohio law controls.

■ The District Court sustained a motion to dismiss the complaint for failure to state a claim upon which relief may be granted. Rule 12(b) (6), Fed.R.Civ.P. On this appeal the facts as alleged in the complaint must be taken as true. For purposes of determining whether a cause of action has been stated, the complaint will be construed liberally. 2A, Moore, Federal Practice, ¶ 12.08.

According to the terms of the cancellation clause of the policy the only two requirements for cancellation by the insurer were the giving of at least ten days' notice and the refunding of the unearned premium. Appellant admits that in cancelling the policy the insurer complied with both of these requirements.

The complaint alleges that the policy was cancelled to injure the plaintiff in his profession and, specifically, that "[s]aid cancellation was further intended to constitute coercion and intimidation of the plaintiff against future court appearance in case No. 173254 or any other case. Said act was designed to impede and obstruct justice." Excerpts from the complaint are made an appendix to this opinion.

Appellant's theory is that the cancellation of his malpractice insurance policy before its normal expiration for the purpose of coercing and intimidating him as a witness in a pending lawsuit, as well as future lawsuits, is contrary to the public policy of the State of Ohio and, as such, constitutes a breach of contract.

The theory of the insurance company is that under Ohio law when the terms of an insurance contract give an insurer an unconditional right to cancel, the insurer has an absolute right to cancel without regard to purpose or motive, notwithstanding an attempt to affect either the willingness of a witness to testify or the substance of his testimony.

■ In Ohio the courts have held that an insurance policy is to be treated as a voluntary contract which is subject to the public policy of the state. In John Hancock Mutual Life Insurance Co. v. Hicks, 43 Ohio App. 242, 247, 183 N.E. 93, 95, the Ohio Court of Appeals said:

"A policy of insurance is a voluntary contract, and may be made upon such terms and conditions as are agreed upon by the parties thereto *so long as they are not in conflict with public policy.* The gist of many

of the decisions of our Supreme Court in recent pronouncements has been to direct attention to the fact that policies of insurance are but simple contracts, and that it is the obligation of the courts to interpret them as such." (Emphasis supplied.)

■ The term "public policy" is not susceptible of precise definition. The Supreme Court of Ohio has stated that "public policy is that principle of law which holds that no person can lawfully do that which has a tendency to be injurious to the public or against the public good * * *." Porter v. Trustees of Cincinnati Southern Railway, 96 Ohio St. 29, 33–34, 117 N.E. 20, 21. This Court has held that the test of whether an insurance contract is void as against public policy under Ohio law is whether "it is injurious to the public or contravenes some established interest of society." McCullough Transfer Co. v. Virginia Surety Co., Inc., 213 F.2d 440, 443 (6th Cir.).

In *Porter* the Court made it clear that the violation of public policy is measured by the tendency of the contract to injure the public good rather than by actual injury under the particular circumstances.

■ When contract litigation requires Ohio courts to determine public policy, the courts look to these sources:

"Sometimes such public policy is declared by Constitution; sometimes by statute; sometimes by judicial decision. More often, however, it abides only in the customs and conventions of the people—in their clear consciousness and conviction of what is naturally and inherently just and right between man and man." Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co. v. Kinney, 95 Ohio St. 64, 68, 115 N.E. 505, 507, L.R.A. 1917D, 641.

The appellant dentist relies upon three sources for public policy against intimidating a witness. In addition to the "customs and conventions of the people," appellant looks to judicial decisions and to the policy expressed in the Ohio Code which prohibits the intimidation of a witness:

"Intimidating witness, juror, or officer.

"No person shall, corruptly or by threats or force, attempt to influence, intimidate, or impede a person whose name has been drawn for jury service, a juror, witness, or officer of any court in the discharge of his duty, or corruptly or by threats or force obstruct or impede, or attempt to obstruct or impede, the due administration of justice therein." Ohio Rev. Code § 2917.07.

Imprisonment for as much as three years may be imposed on anyone who violates this statutory provision.

In dismissing the complaint the District Court found that "the considerations which allegedly motivated the defendant to cancel plaintiff's insurance policy would seem to constitute a corruption of the judicial process. * * *" Nevertheless, the District Court interpreted the Ohio case law as holding that where an insurance policy gives the insurer an unconditional right to cancel, a cancellation cannot be rendered invalid because of an attempt to threaten a witness, contrary to the public policy of the State.

Both the insurance company and the District Court rely primarily on Gibbons v. Kelly, 156 Ohio St. 163, 101 N.E.2d 497, in support of the proposition that under Ohio law a cancellation clause giving the insured an unconditional right to cancel is valid, regardless of the motive or reason for the cancellation. The insurer would have this Court apply to the present case the proposition set forth in the second syllabus of *Gibbons*: "In the absence of legislation the rights of the parties on cancellation of an insurance policy pursuant to its terms are as fixed by the contract as set forth in the policy." We agree that this syllabus is a correct statement of the holding of the Court in that case. Assuming the premise that the cancellation of the policy is to be

"pursuant to its terms" it obviously follows that the rights of the parties are "fixed by the contract as set forth in the policy." For reasons hereinafter stated we hold this rule to be inapplicable in the present case.

According to the statement of the Ohio Court, the issue in *Gibbons* was whether the refund of unearned premium to the insured was a condition of effective cancellation of the particular policy of insurance under consideration. The Court held that under the terms set forth in the policy the refund of unearned premium was neither a condition precedent nor a condition subsequent to cancellation; the insurer was merely indebted to the insured for the amount of any unearned premium. The insurance company also relies on the case of Plotner v. Buckeye Union Casualty Co., 94 Ohio App. 94, 114 N.E.2d 629, which follows the rationale of Gibbons v. Kelly.

The cases of Gibbons v. Kelly and Plotner v. Buckeye Union state and apply the law of Ohio applicable to the refund of unearned premium upon the cancellation of insurance policies. We conclude, however, that the principles announced in those cases are inapposite to the present case.

In *Gibbons* and *Plotner* the Ohio courts were called upon to construe the contract language in order to determine whether the policy had been cancelled effectively. In the present case appellant contends that public policy, a matter completely extrinsic to the contract language, renders the cancellation ineffective.

The issue of the effect of public policy on the cancellation of an insurance policy is not raised in any of the Ohio cases cited by the insurer. The basic distinction between *Gibbons* and *Plotner* and the present case is that in the former any injury caused by cancellation was economic and was limited to the particular individuals involved in the litigation; in the present case the injury which allegedly renders the cancellation ineffective is an injury to the public.

It is re-emphasized that, as this Court previously has interpreted Ohio law, in order for an insurance contract to be void as against public policy it must either be injurious to the public or contravene some established interest of society. McCullough Transfer Co. v. Virginia Surety Co., Inc., supra, 213 F.2d 440, 443. In *Gibbons* and *Plotner* the party whose policy was cancelled did not assert any injury to the public nor any harm to an established interest of society. Under the allegations of the complaint in the present case, the plaintiff charges that the cancellation was undertaken for the purpose of undermining the integrity of the fact-finding process of the Ohio State courts.

Sullivan v. Wilkoff, 63 Ohio App. 269, 26 N.E.2d 460, involved a contract in which a material witness in a lawsuit agreed to forbear in assisting a party to the lawsuit in the preparation of his case. The Ohio Court of Appeals held that the contract was against public policy and void "as being an agreement upon the part of the [witness] to obstruct, impede, and interfere with the administration of public justice." 63 Ohio App. at 273, 26 N.E.2d at 462.

Under the allegations of the complaint, appellant charges that the defendant attempted to threaten and intimidate him as a witness and that the cancellation of his malpractice insurance policy was the means by which the threat was effectuated. The insurance company argues that where jurisdiction is based on diversity of citizenship, federal courts should not declare the public policy of a state. However, in view of the statutory policy against intimidating a witness [1] as well as the case law discussed above, the complaint does not present a situation in which this Court is required to speculate concerning the public policy of Ohio.

The virtual necessity of expert testimony in medical malpractice cases plus the recognized reluctance of members of the medical profession to give such

---

1. Ohio Rev.Code § 2917.07, supra.

testimony[2] render the public policy against intimidating a witness even more compelling in the present case.

It cannot be doubted that the effective administration of justice requires that expert testimony be available in malpractice actions. Rush v. Akron General Hospital, Ohio App., 171 N.E.2d 378, 84 Ohio Law Abst. 292; Oleksiw v. Weidener, 8 Ohio App.2d 199, 195 N.E.2d 813; Modrzynski v. Lust, Ohio App., 88 N.E.2d 76, 55 Ohio Law Abst. 106.

The philosophy of the Ohio Courts is set forth in 42 O.J.2d § 158:

"The issue as to whether a physician has proceeded in the treatment of a patient with the requisite standard of care and skill must ordinarily be determined from the testimony of medical experts, on the theory that what is or is not proper practice in the examination and treatment of a patient, or what is or is not the standard of practice, or the usual practice and treatment in the community, is a question for experts, and must generally be established by their testimony."

In view of the hazards of malpractice actions, the availability of malpractice insurance is of extreme importance to dentists, physicians, and other professional men, and likewise important to their patients and clients.

■ A member of the medical profession could hardly be expected to appear in court and testify for a plaintiff in any litigation if the penalty might be the cancellation of his own malpractice insurance. It manifestly is contrary to public policy to permit an insurance company to use policy cancellation as punishment against a doctor or dentist who appears as a witness to protect the rights of a plaintiff who has been wronged by another member of the profession. If the insurance industry can use the cancellation procedure to keep members of the medical profession from testifying as witnesses, malpractice litigation can be stifled.

■ Having concluded that the insurer's cancellation of appellant's medical malpractice policy violates Ohio public policy insofar as it tends to threaten him as a witness in pending and future lawsuits, we come to the issue of whether the cancellation breached the contract. Appellant does not argue that the cancellation provision of the insurance policy is void. The contention is that the particular purpose for which the power of cancellation was exercised renders the cancellation void.

■ The insurer argues that the insurance contract provided for cancellation by either party at any time upon the giving of appropriate notice and the refund of unearned premium. It is contended that, notwithstanding a violation of public policy, the insurer's exercise of the power of cancellation did not breach the contract. A short answer to such a contention is well stated in Sullivan v. Wilkoff, supra, 63 Ohio App. 269, 273, 26 N.E.2d 460, 462: " 'The law guards with jealousy every avenue to its courts of justice, and strikes down everything in the shape of a contract which may afford a temptation to interfere with its due administration.' " The general rule is that an insurance contract is illegal and void when its purpose is to promote, encourage or effect a violation of law. Couch on Insurance 2d § 39.14.

■ The following statement sets forth the controlling test under Ohio law as to whether a contract is void as against public policy:

"The test by which it is to be decided whether the act upon which a penalty is imposed is also absolutely prohibited * * * is whether the act prohibited is detrimental to the welfare and morals of the public * * *." Warren People's Market Co. v. Corbett & Sons, 114 Ohio St. 126, 138, 151 N.E. 51, 54.

2. This reluctance has been described as the "conspiracy of silence." Cohn, Medical

Malpractice Litigation, 52 A.B.A.J. 32 (1966).

 An attempt to threaten a witness is prohibited by criminal statute. Under the test set forth in *Warren* the threatening or intimidation of a witness is detrimental to the public welfare. In *Warren* the Court distinguishes between acts which are *malum in se* and acts which are *malum prohibitum*. See also Couch on Insurance 2d § 39.8. Acts which are *malum in se* are absolutely prohibited. Therefore, where the result is an act which is absolutely prohibited, it would be meaningless to distinguish between the creation of a contract and the use of an existing contractual power to accomplish such a purpose.

A situation somewhat analogous to the present case is reported in Petermann v. International Brotherhood of Teamsters, etc., Local 396, 174 Cal.App.2d 184, 344 P.2d 25. In *Petermann* the Court recognized that where the term of employment is not fixed, the employment relationship is terminable at the will of either party. The Court held, however, that the right to discharge an employee may be limited by public policy. Thus, in order to effectuate a public policy against perjury, when the reason for the dismissal of an employee is his refusal to give false testimony, an employer could not discharge an employee even though the term of employment was not fixed.

This Court also has had occasion to consider in the light of public policy a contract in which one of the parties attempted to use a power of eviction to accomplish a proscribed purpose. In United States v. Beaty, 288 F.2d 653 (6th Cir.), the government charged that in contravention of the Civil Rights Act certain landowners sought to interfere with the rights of their Negro tenants to register and vote by threatening to evict them under the terms of sharecropping agreements. The District Court concluded that it had no right to deal with the contracts or property interests of the parties. This Court held to the contrary, saying:

"The statute does proscribe threats, intimidation, coercion or attempts to do so for the purpose of interfering with the right of a person to vote for any candidate for federal office. The threats, intimidation or coercion may take on many forms. If sharecropper-tenants in possession of real estate under contracts are threatened, intimidated or coerced by their landlords for the purpose of interfering with their rights of franchise, certainly the fact that the coercion relates to land or contracts would furnish no excuse or defense to the landowners for violating the law." 288 F.2d at 656.

 We conclude that under the allegations of the complaint, if proved, the insurer's cancellation of the appellant dentist's medical malpractice insurance policy would constitute a breach of contract. To hold otherwise would enable the insurer to invoke the cancellation clause for the purpose of intimidating and threatening a witness, an act which is prohibited by the public policy of Ohio.

Reversed and remanded for further proceedings not inconsistent with this opinion.

## APPENDIX
### EXCERPTS FROM COMPLAINT

5. On or about the 6th day of January, 1965, a subpoena was issued by the Clerk of Courts for the Court of Common Pleas, Mahoning County, Ohio and duly served upon Dr. Finn F. L'Orange, commanding him to appear at Mahoning County Common Pleas Court Room No. 5 as a witness. Said subpoena was caused to be issued by Mona Heschelman, plaintiff in case No. 173254. Mona Heschelman had commenced legal action against a Doctor-Dentist. Said case being one for alleged negligence or medical malpractice in treating the plaintiff. In response to said subpoena Dr. Finn F. L'Orange presented himself as commanded and was called by and did testify for and on behalf of plaintiff, Mona Heschelman against the doctor-dentist defendant. The jury on the 19th day of January, 1965 returned a verdict in favor of plaintiff, Mona Heschelman against the doctor-dentist for the sum of Twenty-

Five Thousand Dollars ($25,000.00) and court costs.

6. At the time of the complained of breach of contract by defendant, Medical Protective Company, a Motion for a new trial had been filed and was pending in the Mona Heschelman case.

7. Plaintiff says further that the defendant, Medical Protective Company in addition to having a contract of medical malpractice insurance with him also had a similar contract of medical malpractice insurance with the doctor-dentist defendant in Mahoning County Common Pleas Court Case No. 173254 filed by Mona Heschelman. On or about the 10th day of February, 1965 plaintiff, Dr. Finn F. L'Orange received a written notice from the defendant, Medical Protective Company that it was cancelling the aforementioned medical malpractice insurance, contract No. 372353 effective February 22, 1965.

8. Plaintiff further says that said cancellation was done willfully, with malice and with the purpose and intent to hurt, harm and injure the plaintiff in the practice of his profession.

9. Said cancellation was done for revenge and was intended to punish the plaintiff for responding to the aforementioned Court subpoena in Mahoning County Common Pleas Court Case No. 173254 and for testifying in behalf of the plaintiff in a medical malpractice case against a "fellow doctor."

10. Said cancellation was further intended to constitute coercion and intimidation of the plaintiff against future court appearance in case No. 173254 or any other case. Said act was designed to impede and obstruct justice. Said wrongful cancellation was intended as a threat and a warning to every member of the medical profession insured by this defendant that they could expect similar cancellation of their medical malpractice insurance if they testified in Court for a plaintiff in a medical malpractice case against a "fellow doctor." Said threat and warning was for the purpose of impeding and obstructing the administration of justice in cases as yet unfiled and untried.

11. The cancelled insurance contract was for a specialty type of insurance protection and not readily obtainable wherefore it was difficult for the plaintiff to secure a replacement insurance contract, all of which has reflected upon and has damaged his professional reputation in his community. The delay in securing a replacement insurance contract created a period when it was necessary for plaintiff to practice his profession of dentistry without the protection afforded by said medical malpractice insurance, all of which caused him to suffer mental anguish, anxiety, humiliation, physical pain and suffering.

12. Because of the defendant's wrongful cancellation of this contract, the plaintiff's patients were denied the financial protection he attempted to provide for them in the event he was negligent in his treatment of them and caused them harm.

13. The insurance contract secured by the plaintiff to replace the contract wrongfully terminated by the defendant was at an increase in premium cost for the same protection.

14. Plaintiff says further that cancellation of the contract by the defendant, as an act of revenge and punishment for responding to a Court subpoena and testifying for a plaintiff in a medical malpractice case against a "fellow doctor" is in violation of public policy and constitutes a breach of contract.