PHARMACIA HEPAR, INC., Appellee,

v.

CITY OF FRANKLIN; Water Conservation Subdistrict,
Miami Conservancy District, Appellant.

[Cite as *Pharmacia Hepar, Inc. v. Franklin* (1996), 111 Ohio App.3d 468.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA95–04–034.

Decided June 3, 1996.

470

*Faruki, Gilliam & Ireland, D. Jeffrey Ireland, Paul D. Hallinan* and *Ann Wightman*, for appellee.

*Altick & Corwin, Robert N. Farquhar* and *Robert B. Berner*, for appellant.

KOEHLER, Judge.

Defendant-appellant, the Water Conservation Subdistrict of the Miami Conservancy District,[1] appeals from a decision in the Warren County Court of Common Pleas granting the motion of plaintiff-appellee, Pharmacia Hepar, Inc., for specific performance of a settlement agreement between the parties. For the following reasons, we affirm the decision of the trial court.

Pharmacia Hepar, Inc. ("Hepar") is a pharmaceutical manufacturer located in the city of Franklin ("city"). Hepar manufactures Heparin, an anticoagulant drug which is derived from beef lungs and porcine mucosa. The manufacturing process produces a nontoxic biological waste resembling hamburger, which is referred to as "digest liquor." Digest liquor falls into a general waste category referred to as chemical oxygen demand ("COD").

The Water Conservation Subdistrict of the Miami Conservancy District ("Subdistrict") owns the Franklin Area Wastewater Treatment Plant ("FAWTP") to which Hepar discharges its sewer waste under a city-issued Industrial User Wastewater Permit. The FAWTP operates under an Ohio Environmental Protection Agency National Pollution Elimination System Permit. The Subdistrict has a contractual arrangement with the city to provide waste user wastewater treatment at the FAWTP. The Subdistrict also regulates industrial waste discharge to the FAWTP and monitors compliance with federal, state and local environmental regulations.

---

1. The city of Franklin and City Manager Samuel Coxson were also defendants in the proceedings below but are not parties to this appeal.

In October 1992, the FAWTP had a major permit violation due to illegal discharges from the treatment plant into the river. The Subdistrict determined that Hepar's discharge of digest liquor into the sewer system was the source of the problem and asked the city to take enforcement action against Hepar. On November 4, 1992, the city issued a cease-and-desist order against Hepar, prohibiting all discharge of waste user wastewater. Hepar sought and was granted a temporary restraining order ("TRO") in the trial court to prevent the city from enforcing the cease and desist order. The parties formed a working group to attempt a settlement.

After several working group meetings and preliminary settlement agreement drafts, Hepar and the city entered into a written settlement agreement on June 11, 1993. Hepar agreed to purchase, obtain the necessary permits for, and install a drum dryer system. The drum dryers would enable Hepar to dry digest liquor, thus reducing it to a form where it could be spread on land or potentially sold to the pet food industry. A preamble to the settlement agreement notes that Hepar considers the drum dryer system to be the "preferred" method of processing Hepar's digest liquor.

The settlement agreement also includes pounds-per-day limits on certain Hepar waste discharges, calculated on a monthly average basis. Paragraph Seven limits chemical oxygen demand ("COD") discharge to 8,330 pounds per day. Paragraph Eight limits total suspended solids ("TSS") discharges to five hundred pounds per day. Paragraph Nine limits ammonia ("NH3") discharge to thirty pounds per day.

Hepar applied for and received a permit to install ("PTI") the drum dryer system from the Ohio Environmental Protection Agency. The PTI characterizes the drum dryers as a pretreatment system. Two drum dryers were installed at Hepar's production facility in June 1994. The only access from the drum dryers to the sewer is via a locked emergency bypass valve to which only Hepar's production manager has a key.

On June 1, 1994, Hepar informed the Subdistrict by letter that the drum dryers would dry all biological waste with the exception of one batch per week, but that the settlement agreement's discharge limits could still be met. The Subdistrict responded that it considered any direct discharge of digest liquor into the sewer system to be a violation of the settlement agreement and denied Hepar's request to discharge.

On October 2, 1994, Hepar filed a complaint for specific performance of the settlement agreement, breach of the settlement agreement, and deprivation of property rights. The trial court issued a TRO under which Hepar was to adhere to discharge requirements of Paragraph Two of the settlement agreement, which

had been negotiated by the parties for use until the drum dryer system became operational.

Following a hearing in the Warren County Court of Common Pleas, the trial court issued a decision finding the settlement agreement ambiguous as to whether its COD discharge limits included or excluded digest liquor. The court considered parol evidence, affording considerable weight to preliminary drafts of the settlement agreement. The court found in favor of Hepar, concluding that the final settlement agreement did not restrict itself to waste user wastewater other than digest liquor, but was all inclusive. The Subdistrict appeals, raising the following assignments of error:

Assignment of Error No. 1:

"The trial court erred when it rejected the Subdistrict's argument that Hepar's position was contrary to Paragraph 14 of the settlement and the city's pre-treatment ordinances."

Assignment of Error No. 2:

"The trial court erred when it held that the settlement was ambiguous and, as a result, did not uphold the Subdistrict's interpretation of the settlement."

Assignment of Error No. 3:

"The trial court erred when it failed to apply equitable estoppel against Hepar."

Assignment of Error No. 4:

"The trial court erred in its interpretation of preliminary drafts of the settlement to the exclusion of other relevant evidence."

Assignment of Error No. 5:

"The trial court erred when it found that there was no mutual mistake."

In its first assignment of error, the Subdistrict argues that Hepar's interpretation of the settlement agreement as allowing discretionary use of the drum dryer system subject to the overall discharge limits violates Paragraph Fourteen of the settlement agreement [2] and is an illegal bypass of a pretreatment system under Franklin Codified Ordinances 921.04(d). That section specifies in part that "[a]ll industrial users are prohibited from bypassing any pretreatment facility. Pretreatment facilities are required to be operated at all times." *Id.*

"Pretreatment" is defined to include "the reduction of the amount of pollutants * * * in wastewater prior to or in lieu of discharging such wastewater into the

---

2. Paragraph Fourteen of the settlement agreement specifies in part that "Kabi [Hepar] agrees to comply with all local, state and federal pretreatment program requirements."

publicly owned treatment works (POTW)." Franklin Codified Ordinances 921.01(z). "Bypass" is defined as "the intentional diversion of wastes from any portion of a * * * pretreatment facility." Franklin Codified Ordinances 921.01(c).

The trial court found that the Subdistrict failed to produce evidence that the city ever took action against Hepar for violation of Franklin Codified Ordinances Chapter 921 or Hepar's discharge permit. The court therefore concluded that Hepar had not violated Paragraph Fourteen of the settlement agreement. The Subdistrict argues that because Hepar's direct discharge of digest liquor to the sewer system was sanctioned by the TRO, "there were no actual violations to pursue."

Under the TRO, the court specifically reserved jurisdiction to modify the order if Hepar's discharge violated its waste user wastewater discharge permit or the FAWTP's EPA discharge permit. See *Troy Amusement Co. v. Attenweiler* (1940), 137 Ohio St. 460, 465, 19 O.O. 153, 155–156, 30 N.E.2d 799, 801 (a court of equity will not interfere by injunction to prevent the enforcement of criminal statutes at the instance of an alleged law violator).

In addition, despite what Hepar's perception is as to its operation of the drum dryer system and as to what constitutes compliance with the city pretreatment ordinance, the uncontroverted testimony of company president Ola Andersson was that Hepar *is* running the drum dryers and cannot meet its production demand and stay within the discharge limits if it does not run the dryers. Further, there is no evidence that Hepar has ever discharged to the sewer through the drum dryer bypass valve. Finally, Andersson's testimony that use of the dryer system has reduced Hepar's load to the sewer plant was also uncontroverted.

We find upon consideration of the above that there is no evidence that the Subdistrict pursued an alleged violation of any discharge permits against Hepar and no evidence that Hepar, whatever its thoughts or perception about operating the dryers, was not in compliance with the city pretreatment ordinance. Therefore the trial court correctly found that the settlement agreement was not breached as to Paragraph Fourteen, whereby Hepar agreed to be bound by local, state, and federal pretreatment requirements. See *State v. Gray* (Nov. 18, 1982), Ross App. No. 892, unreported, 1982 WL 3588 ("[t]o date no statutory authority or case authority has been discovered which would subject one to criminal prosecution for merely thinking or planning 'evil thoughts.' "). The Subdistrict's first assignment of error is overruled.

The Subdistrict's second and fourth assignments of error will be considered together. The Subdistrict argues in its second assignment that the trial court erred in finding the settlement agreement ambiguous and in not upholding the

Subdistrict's interpretation of the agreement. The Subdistrict argues in its fourth assignment that the trial court erred by interpreting preliminary drafts of the settlement agreement and excluding other parol evidence to determine the parties' intent.

Contracts are to be interpreted to carry out the intent of the parties, as that intent is evidenced by the contractual language. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920, 922–923. If the contract language is capable of two reasonable but conflicting interpretations, however, there is an issue of fact as to the parties' intent. *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 448–449, 474 N.E.2d 271, 272–273. An appellate court should not substitute its judgment for that of the trial court where there is competent and credible evidence supporting the trial court's findings of fact. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 262, 376 N.E.2d 578, 579.

Parol evidence is admissible in order to interpret, but not contradict, the terms of a contract when the language is ambiguous. *Ohio Historical Soc. v. Gen. Maintenance & Eng. Co.* (1989), 65 Ohio App.3d 139, 146, 583 N.E.2d 340, 344–345. Preliminary negotiations may be considered for the purpose of explaining ambiguous language in a written contract. *Tru–Built Garage & Lumber Co., Inc. v. Mays* (Jan. 27, 1993), Montgomery App. No. 13432, unreported, 1993 WL 15664, citing *New York Cent. RR. Co. v. Gen. Motors Corp.* (N.D.Ohio 1960), 182 F.Supp. 273, 12 O.O.2d 349.

In this case, the trial court found that the settlement agreement was ambiguous as to whether the COD discharge limit specified in Paragraph Seven was inclusive or exclusive of digest liquor. The Subdistrict argues that the settlement agreement requires Hepar to process all digest liquor through the dryers. Hepar contends that although the dryer system is one allowable disposal method, it can also discharge directly into the sewer as long as its overall COD discharge limit is not exceeded. We agree with the trial court that the agreement is subject to two reasonable interpretations on this point and is therefore ambiguous. See *Inland Refuse,* 15 Ohio St.3d at 322, 15 OBR at 448–449, 474 N.E.2d at 272–273.

The trial court heard testimony from various witnesses concerning the working group meetings and the settlement agreement negotiation process. The trial court also examined preliminary drafts of the settlement agreement prepared by Hepar and the Subdistrict's responses to those drafts. The trial court's conclusion was that the "history of draft agreements * * * make the subjective

impressions and/or interpretations of the several witnesses of little or no weight in construing these terms which may be deemed to be ambiguous."

■ The trial court's language goes to the weight afforded the evidence, not its exclusion. We find the trial court's decision to give greater weight to written draft agreements than to other evidence to be within its discretion as fact finder. See *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212 (weight to be given evidence and the credibility of witness are determinations to be made by the trier of fact). The Subdistrict's fourth assignment of error is therefore overruled.

■ The trial court noted first that each draft of the agreement contemplated Hepar's installation of a drum dryer system. There were two central issues in the settlement negotiations, however, evidenced by the draft agreements. The first was an express ban on Hepar's discharge of digest liquor into the sewer after installation of the drum dryer system. MCD would write this into the draft agreements and Hepar would take it out. The second was the inclusion of daily load limits for COD, TSS and NH3 discharges. Hepar would write these into the draft agreements and MCD would take them out. The final agreement did not contain the ban on direct discharge of digest liquor and did contain the daily load limits.

The trial court concluded that "despite the anticipated installation of a drum dryer system, the plaintiff perceived the necessity of the additional discharge of digest liquor. * * * Further, it was at all times seeking limits for that discharge possibility." In addition, the final agreement contains an integration clause and a statement of the parties' full understanding and advice of counsel as to the terms of the agreement.

We find the trial court's conclusion that the discharge limits of Paragraph Seven did not exclude digest liquor is supported by competent, credible evidence and therefore is not against the manifest weight of the evidence. See *Seasons Coal Co.,* 10 Ohio St.3d at 80, 10 OBR at 411, 461 N.E.2d at 1276; *C.E. Morris,* 54 Ohio St.2d at 280, 8 O.O.3d at 262, 376 N.E.2d at 579. The Subdistrict's second assignment of error is overruled.

■■ The Subdistrict argues in its third assignment of error that the trial court erred in failing to apply equitable estoppel against Hepar. The elements of equitable estoppel require that first there be a factual representation by words, acts, or silence. The facts underlying the representation must be known to the party at the time he makes it, or circumstances must be such that such knowledge is chargeable to him. Second, the representation must be misleading. Third, the representation must induce reasonable reliance by the second party. Fourth, the relying party must suffer prejudice if the first party is not estopped

from asserting a right contradictory to his earlier representation. *First Fed. S. & L. Assn. v. Perry's Landing, Inc.* (1983), 11 Ohio App.3d 135, 145, 11 OBR 215, 226–227, 463 N.E.2d 636, 647–648.

In this case, the draft settlement agreements indicate that a key element in the negotiations was Hepar's insistence on including specific discharge limits for the three waste categories and Hepar's refusal to include a ban on direct discharge of digest liquor. The following exchange took place during cross-examination of James Rozelle, the Miami Conservancy District's General Manager and Chief Engineer:

"Q. [by Hepar counsel Paul Hallinan]: Now I understand that somewhere along the way, even though you tried to get this provision in early on [ban on direct discharge of digest liquor], at some point you decided we don't need to put that in because we have agreement on that, right?

"A. That's correct.

"Q. So if I understand, if you have [an] agreement on something you don't put it in the agreement, is that right?

"A. The conclusion was that the settlement agreement was not going to be signed, unless that was not in there for whatever reasons Mr. Andersson didn't want it in there, and so it was eliminated from the final settlement.

"Q. Because he was unwilling to accept it, true?

"A. For whatever reasons that's true."

The Subdistrict executed the settlement without a ban on digest liquor discharge, knowing that Hepar would not have signed a settlement agreement containing such a ban. As the trial court also noted, despite testimony from the Subdistrict about lack of trust between the parties at the outset of negotiations, by the end of the process the Subdistrict considered its key requirement, an express ban on digest liquor discharge, "unnecessary" because Hepar had already filed its PTI application describing the drum dryers as a pretreatment system.

The Subdistrict agreed that this document was a complete integration of the parties' agreement, executed with a full understanding of its terms and with the advice of counsel. There is no indication of a misleading representation of fact by Hepar which induced the Subdistrict to sign this agreement. As a result, we find the trial court's conclusion that the Subdistrict failed to assert a claim for equitable estoppel to be supported by the evidence. The Subdistrict's third assignment of error is overruled.

The Subdistrict argues in its fifth assignment of error that the trial court erred when it found that there was no mutual mistake with respect to the settlement agreement. A mutual mistake as to a material part of a contract can

be grounds for the rescission of the contract. *Reilley v. Richards* (1994), 69 Ohio St.3d 352, 632 N.E.2d 507. A mutual mistake of fact is present where a mistake by both parties as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances. *Id.* at 353, 632 N.E.2d at 509, citing 1 Restatement of the Law 2d, Contracts (1981) 385, Mistake, Section 152(1).

The parties in this case went through two preliminary drafts before a final settlement agreement was reached. Each draft anticipated Hepar's installation of a drum dryer system. It is also clear from these draft agreements that in addition to installing the dryers, Hepar refused to include a ban on direct discharge of digest liquor and insisted on discharge limits for a generic biological waste category.

We can only conclude that since the specific language relating to a ban on direct discharge of digest liquor was not included in the final settlement agreement, the Subdistrict knew that Hepar was opposed to such a ban. Further, regardless of what the Subdistrict felt was encompassed by Hepar's PTI application to install the drum dryer system, the Subdistrict assumed whatever risks were involved by not insisting on specific language in the settlement agreement concerning the direct discharge of digest liquor. See *Rongone v. Ohio Machine Tool & Design, Inc.* (Mar. 13, 1991), Summit App. No. 14706, unreported, 1991 WL 35101. There being no evidence of mutual mistake, the Subdistrict's fifth assignment of error is overruled.

Before concluding, we must address a matter of public policy which appears with regard to Paragraphs Seventeen and Eighteen of the settlement agreement. Paragraphs Seventeen and Eighteen specify that if MCD believes that Hepar has violated either the city sewer use ordinance, Hepar's own discharge permit or FAWTP's EPA discharge system permit, then MCD must notify certain individuals at Hepar, attend a meeting with Hepar and city representatives prior to any formal enforcement measures, and may only seek immediate enforcement if Hepar notifies MCD that it has not taken any "corrective action."

These two paragraphs do not involve disputes arising out of the settlement agreement, as Hepar's characterization of them as alternative dispute resolution would suggest. Paragraphs Seventeen and Eighteen concern environmental regulations which carry potential criminal liability. As such, the requirements of paragraphs Seventeen and Eighteen interfere with the due enforcement of these laws, are against public policy, and are therefore void. See *Sullivan v. Wilkoff* (1939), 63 Ohio App. 269, 273, 17 O.O. 32, 34, 26 N.E.2d 460, 462.

The judgment of the trial court is affirmed, with Paragraphs Seventeen and Eighteen of the settlement agreement declared void as against public policy.

*Judgment accordingly.*

WALSH, P.J., and POWELL, J., concur.