## EQUITABLE LIFE INS CO OF IOWA v GERWICK

Ohio Appeals, 5th Dist, Muskingum Co

No 521.   Decided November, 1934

Frazier & Holliday, Zanesville, for plaintiff in error.

Meyer & Crossan, Zanesville, and Knepper, White, Smith & Dempsey, Columbus, for defendant in error.

**OPINION**

By LEMERT, J.

It is conceded in this action that plaintiff was totally, wholly and continuously disabled from May 1, 1932, until November 15, 1932, and that her disability was caused by disease. The four policies in question and the proofs of loss filed thereunder are made a part of the statement of facts. So that, upon the foregoing statement of facts, the only question presented in the court below and the question at issue now, is whether such disability of the plaintiff was permanent as contemplated by the policies which were attached to said agreed statement of facts and made a portion thereof.

In determining the right of recovery of the defendant in error, it is necessary to consider the provisions of the health and accident endorsements attached to the policies hereinbefore referred to. The parties have agreed on the facts and therefore the question as to whether the disability of defendant in error was permanent within the terms of the policies becomes a question of law for the court to determine.

In the court below defendant in error contended that the insurance company meant that the total disability, on proof of which it would grant the benefits named, was not one which must last during the entire life of the insured, but was rather a disability from which there might be hope of recovery and which might terminate prior to the insured's death.

Plaintiff in error refused to adopt this view but, instead, contended that since defendant in error had recovered from her total disability prior to the time of trial, her disability was not covered by these policies.

The policies under consideration herein are Ohio contracts and they should be interpreted in accordance with the Ohio law of insurance policy construction.

We are of the opinion that the word "permanent" must be construed according to its nature and character and its relation to the subject matter of the policies of insurance and the health and accident endorsements contained therein.

Where the language of a clause used in an insurance contract is such that courts of numerous jurisdictions have found it necessary to construe it and in such construction have arrived at conflicting conclusions as to the correct meaning, intent and effect thereof, the question whether such clause is ambiguous ceases to be an open one. The rule in Ohio is that ambiguous language is to be construed most strongly against the party selecting the language and most favorably toward the party sought to be charged, and is especially applicable to contracts executed subsequently to such conflicting judicial construction. Policies, which are prepared by the insurance company, and which are reasonably open to different interpretations, will be construed most favorably to the insured.

Courts should always have in mind the relation of the parties to each other. They should give the language of the contract the meaning on which the minds of the parties may be said to have met and which will effectuate their object in entering into it. The reason for this rule is that the insured has no voice in the selection or arrangement of the words employed and that the language of the contract is selected with great care and deliberation by experts and legal advisers employed by and acting exclusively in the interest of the insurance company, and therefore it is at fault for any ambiguity or uncertainty therein. This principle is ably discussed in 14 Ruling Case Law, 926. It would then follow that in the case at bar, the language of this policy being ambiguous and subject to more than one reasonable interpretation, it must be construed favorably to the defendant in error in order to grant indemnity rather than to deny it.

We believe the law is well settled that by virtue of the circumstances under which these insurance policies were issued that they are Ohio contracts and governed by

Ohio law. The general rule is well stated in 14 Ruling Case Law, 892, where it says:

"The general rule is that the contract is governed by the laws of the place where the last act is done which is necessary to complete the transaction and bind both parties * * * And where delivery and payment of the first premium are the final acts, the place of delivery and payment is the place of the contract."

In the instant case the application was filled out in Zanesville, Ohio, and handed to the general agent of the plaintiff in error company in that city; a physician selected by the plaintiff in error examined defendant in error in Zanesville, Ohio: the policies, after having been written by the Home Office, were forwarded to said general agent in Zanesville, Ohio, and by him delivered to the defendant in error in Zanesville, Ohio: the first premium on each of the policies was paid by the defendant in error to said general agent in Zanesville, Ohio. These facts bring this case squarely within the rule laid down in the case of **Piaut, Administrator v Mutual Life Insurance Company, 4 O.C.C., N.S., 94.** This rule is likewise stated in 22 **Ohio Jurisprudence,** 349. The same rule was followed in **11 Oh Ap, 405.**

The word "permanent" must be construed according to its nature and character and its relation to the subject matter of the policies of insurance and the health and accident endorsements in which it is contained.

The plain, unequivocal rule is that a contract must be construed as a whole and the intent of the parties must be determined from the entire instrument and not from detached parts. It is necessary to construe all the parts of the contract in order to determine the meaning of any particular part, as well as the meaning of the whole. Particular words must be considered in connection with the rest of the agreement and all parts of the writing and each word in it must be given effect, if at all possible.

The Ohio rule is to this effect and is well stated in the case of **Insurance Company v Roest, 55 Oh St, 581,** where the court says, at page 585:

"It is a rule of construction, founded in reason and resting upon abundant authority, that the meaning of the contract is to be gathered from a consideration of all its parts, and that no provision is to be wholly disregarded because inconsistent with other provisions unless no other reasonable construction is possible; and that a special provision will be held to override a general provision only where the two cannot stand together. If reasonable effect can be given to both, then both are to be retained."

The same rule is laid down in the case of **Legler, Administrator v Guaranty Company, 88 Oh St, 336.**

We note that in a very recent case against this same plaintiff in error, determined by the Supreme Court of the State of Minnesota, with the identical policy provisions, these provisions were construed in favor of the insured, under facts very similar to the facts in the case at bar; that being the case of Mase v The Equitable Life Insurance Company of Iowa, 188 Minn., 139; 246 NW, 737; decided by the Supreme Court of Minnesota, February 3, 1933.

The facts in the Mase case are so similar to the facts in the case at bar as to make the finding in this case conclusive. The plaintiff in error knew of this decision long before the petition in the instant case was filed, and yet it continued to refuse to return Miss Gerwick's premiums, and continued to refuse to pay her the benefits to which she was entitled under this clear construction of her policies.

The great weight of authority in other jurisdictions following the Ohio rule of policy construction establishes the right of the defendant in error to a judgment in her favor.

In practically all the cases the courts of last resort, having analyzed and interpreted policies identical to the case in question here, have said that the word "permanent" can not mean everlasting or for life in view of the provision that when it is made to appear "that such total disability has then existed for not less than 60 days," the company will grant certain benefits.

This principle was followed in the case of Wenstron v Aetna Life Insurance Company, 215 NW, 93, decided in North Dakota in 1927.

Insurance policies such as the ones in the instant case contemplate the accrual of liability for income payments and waiver of premiums under conditions which, at the time, are indicative of permanency, but may later prove to be of less than life long duration. The fair interpretation of the policies is that the parties intended payment to be made as long as an apparent permanency lasted, with the proviso that if time proved the seemingly permanent condition to be not such, the payments should cease. This is the gist of the equit-

able construction of the contracts and is the consequence of interpreting the phrase "total and permanent disability" according to its nature and its relation to the subject matter and intent of the policies.

When Miss Gerwick furnished evidence of her total disability for sixty days and adduced proof raising a reasonable presumption that her disability would continue for an indefinite time, she then became entitled to receive her income benefits and waiver of premiums **during the continuance of her disability.**

The plaintiff in error company can not evade its contractual obligations by shielding itself behind a fabricated smoke screen of untenable conclusions, based upon ambiguous verbiage, prepared and selected by the company, itself. The experts and legal advisers of the plaintiff in error drew these policies with great care and deliberation. The company alone is responsible for the ambiguities and uncertainties therein contained. It would be unjust to allow this insurance company to profit therefrom, at the expense of the policy holder, who had paid out hard earned cash in an honest effort to protect herself and her dependents from unseen contingencies, caused by accident or illness.

The clause of these policies providing for payment during the continuance of the disability on a monthly basis, and to be discontinued when disability was ceased, modified and limited and defined the word "permanent" so that it means for an indefinite and indeterminable period.

We think this definition is in line with the manifest intention of the parties to these contracts and is supported by a long line of well reasoned cases which follow the Ohio rules of insurance policy construction.

The construction for which plaintiff in error contends can not be adopted in Ohio, for—as it was well said in The Equitable Life Assurance Company v Serior

"To give said terms the strict or liberal interpretation stated would be to convict a reputable insurance company of having put out among our people and having collected from them premiums on a policy provision which in effect would be scarcely more than a cheat, a pretense and a fraud."

Certainly that could not have been intended.

So that, in the instant case, the facts are undisputed and the law is clear cut. Under the overwhelming weight of author-ity the judgment of the trial court should be and the same is hereby affirmed.

Exceptions may be noted.

SHERICK, PJ, and MONTGOMERY, J, concur.