**TRI–STATE GROUP, INC., Appellant,**

v.

**OHIO EDISON COMPANY et al., Appellees.**

[Cite as *Tri–State Group, Inc. v. Ohio Edison Co.*, 151 Ohio App.3d 1, 2002-Ohio-7297.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 02 BA 14.

Decided Dec. 26, 2002.

2

Zink, Zink & Zink Co., L.P.A., and Larry A. Zink, for appellant.

Thornburg, Bean & Glick and Charles H. Bean, for appellees.

_____

WAITE, Judge.

{¶ 1} This is an appeal of a decision of the Belmont County Court of Common Pleas to grant a motion for summary judgment in a declaratory judgment action. The trial court determined that appellant, Tri–State Group, Inc., held legal title to fly ash that it had hauled away from the R.E. Burger power station in Dilles Bottom, Ohio, which is owned by appellee Ohio Edison Company. The fly ash is residue from coal burned at the power station. Some time ago, appellant entered into a contract to dispose of the fly ash, but the contract did not specifically state that appellant owned the fly ash once it was hauled away. Although appellant now has possession of this ash, it believes that Ohio Edison is the true owner. Ultimately, appellant believes appellee is responsible for cleaning up the storage site where the fly ash has been held for almost two decades. Despite appellant's contentions, the trial court was correct in granting summary judgment to appellee.

{¶ 2} On April 13, 2000, appellant filed a declaratory judgment complaint in the Belmont County Court of Common Pleas. Appellant alleged that it had operated a fly ash disposal site in Mead Township, Belmont County, since June 1, 1985. It alleged that a June 18, 1985 purchase order authorized appellant to transport appellee's fly ash to appellant's disposal site. Appellant claimed that appellee retained dominion and control over the fly ash and continued to be the true owner. Appellant also alleged that the Ohio Environmental Protection Agency ("Ohio EPA") ordered the Mead Township disposal site to be closed and the fly ash removed, but that it had informed the Ohio EPA since 1995 that it was not the owner of the ash. Appellant requested declaratory relief to determine, "who [is] the owner of the fly ash * * * and who is responsible for the removal, clean up and closure of the [Mead Township] Property * * *."

{¶ 3} Appellant named Ohio Edison and the state of Ohio as defendants, but on May 11, 2000, the state filed a motion to be dismissed as a defendant from the case. The motion was granted in June.

{¶ 4} At some point prior to June 21, 2000, there was a motion to consolidate this case, designated as common pleas case No. 00 CV 138, with another case filed by the state against both appellant and appellee, referred to as case No. 00 CV 180. Although it does not appear that the cases were consolidated, there are numerous documents in the record bearing both case numbers, and the two cases were processed as one.

4

{¶ 5} On July 23, 2001, appellee filed a motion for summary judgment, requesting judgment in its favor in case Nos. 00 CV 138 and 00 CV 180.

{¶ 6} On that same date, appellant also filed a motion for summary judgment. In support of its motion, appellant attached purchase order A–61573, dated June 18, 1985, which authorized appellant to remove and dispose of fly ash from June 1, 1985, through May 31, 1986. This purchase order did not specifically state the exact moment that appellant was to become the owner of the fly ash. Appellant also included purchase order FS–106, dated July 8, 1986, which authorized appellant to remove and dispose of fly ash from June 1, 1986, through February 28, 1987. That purchase order stated that appellant shall "assume legal title and have full responsibility for the ash once it is loaded into contractor's trucks."

{¶ 7} Appellant also included select portions of a deposition of Dennis W. Plummer, who was purportedly an employee of Ohio Edison in 1985 and 1986. Appellant refers to page 31 of that deposition, in which Plummer states, "See, the first purchase order, title passed when it was disposed." Only a few scattered pages of the deposition were included, and the deposition is not certified. Furthermore, the partial deposition does not include any identification testimony establishing Mr. Plummer's relevance to the case.

{¶ 8} On February 19, 2002, the trial court filed a consolidated judgment entry in case Nos. 00–CV–138 and 00–CV–180. The court overruled appellant's July 23, 2001 motion for summary judgment. The court also granted appellee's motion for summary judgment and declared that purchase order A–61573 transferred to appellant legal title to all fly ash hauled away prior to June 1, 1986.

{¶ 9} Appellant filed this timely appeal on March 15, 2002.

{¶ 10} Appellant's sole assignment of error asserts:

{¶ 11} "The trial court erred in finding that no genuine issues of material fact exist concerning the ownership of Ohio Edison's fly ash deposited on Tri–State's property pursuant to Ohio Edison purchase order A–61573."

 {¶ 12} It is clear that this case is not about determining which party owns something of value, but rather, who is responsible for the disposal and cleanup of a large amount of solid waste in the form of fly ash that was generated by an electrical power plant. Appellant hauled this fly ash away from appellee's power plant well over a decade ago and has not been able to dispose of it. Appellant appears to be using the declaratory judgment process to try to circumvent a number of highly regulated areas of the law. All the following areas of law have comprehensive regulatory schemes governing them: public utilities (R.C. Chapter 4901 et seq.; Ohio Adm.Code 4901–1 et seq.); electrical power plants (R.C. Chapters 4906, 4933; Ohio Adm.Code 4901–1 et seq., 4906 et seq.); solid waste disposal (R.C. Chapters 3734, 3745; Ohio Adm.Code 3734–1,

3745–27–01 et seq.); residual waste landfills, including fly ash landfills (Ohio Adm.Code 3745–30–01 et seq.); reclamation of fly ash and other coal combustion byproducts (R.C. Chapter 1513); fly ash disposal (Ohio Adm.Code 3745–27–01 et seq., 3745–30–01 et seq.); and environmental protection of the air, water, and land (R.C. Chapter 3745; Ohio Adm.Code 3745–1–01 et seq.). "The Declaratory Judgments Act, R.C. Chapter 2721, was not intended to be used to circumvent * * * comprehensive agency processes." *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 469, 613 N.E.2d 591. Based on this consideration alone, appellant cannot prevail in this appeal.

{¶ 13} Assuming that the trial court was permitted to render a declaratory judgment in this action, appellant argues that the evidence shows no material facts in dispute to preclude summary judgment pursuant to Civ.R. 56(C). In a nutshell, appellant argues:

{¶ 14} 1. Purchase order A–61573 did not define when title to the fly ash transferred.

{¶ 15} 2. A later purchase order specifically defined that title to the fly ash was transferred when the ash was loaded into appellant's trucks.

{¶ 16} 3. It should be inferred that the earlier purchase order did not authorize the transfer of title of the fly ash until appellant had made a final disposition of the fly ash.

{¶ 17} 4. Because purchase order A–61573 did not define when ownership of the fly ash was transferred, the purchase order was ambiguous.

{¶ 18} 5. Ambiguous contracts may be explained by using parol evidence.

{¶ 19} 6. Parol comments made by Plummer at his deposition bolster the conclusion that ownership of the fly ash did not transfer until appellant had determined final disposition of the ash.

{¶ 20} 7. Other parol evidence, in the form of a letter from Plummer, indicates that appellee retained control over the fly ash even after appellant had gained possession.

{¶ 21} 8. Retaining control over the fly ash is tantamount to claiming ownership of the ash.

{¶ 22} An appellate court reviews de novo the decision to grant a motion for summary judgment, using the same standards as the trial court, as set forth in Civ.R. 56(C). *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. Before summary judgment can be granted, the trial court must determine that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one

conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264. If the moving party meets its initial burden, the nonmoving party bears a reciprocal burden to produce evidence on any issue for which that party bears the burden of proof at trial. Id. at 293, 662 N.E.2d 264.

{¶ 23} At first glance, appellant's argument borders on the absurd. Appellant is claiming that it only became the owner of the fly ash after it was finally and completely disposed of, i.e., after it was destroyed and out of appellant's possession. Under appellant's reasoning, it never could have been considered the owner of the fly ash under any circumstances.

{¶ 24} Second, appellant's arguments are not supported by any admissible evidence. The types of evidence that may rebut a motion for summary judgment are found in Civ.R. 56(C): "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action * * *." Appellant partially relies on Plummer's uncertified and unsworn deposition testimony to rebut appellee's motion for summary judgment. Uncertified and unsworn depositions are not the types of evidence permitted by Civ.R. 56(C). *Biskupich v. Westbay Manor Nursing Home* (1986), 33 Ohio App.3d 220, 222, 515 N.E.2d 632; *State ex rel. Corrigan v. Seminatore* (1981), 66 Ohio St.2d 459, 467, 20 O.O.3d 388, 423 N.E.2d 105. Plummer's partial deposition was not properly submitted and should be disregarded.

{¶ 25} Appellant also relies on a letter from Plummer to a Mr. Straub, an employee of appellant's. The letter does not indicate Plummer's relationship to Ohio Edison. Appellant believes that this letter contains evidence supporting a conclusion that appellee retained control over the fly ash even after it was in appellant's possession.

{¶ 26} Appellant does not explain how appellee's alleged assertion of control over the fly ash would legally affect the terms of the contract. It is true that one of the incidents of ownership is the right to control. See, e.g., *Univ. Hosps. of Cleveland, Inc. v. Lynch,* 96 Ohio St.3d 118, 2002-Ohio-3748, 772 N.E.2d 105. "[T]he chief incidents of ownership * * * are the rights of possession, of use and enjoyment, and of disposition." *Rhoades v. State* (1946), 224 Ind. 569, 70

N.E.2d 27. We will presume that appellant is making a general claim that ownership may be established by proving one or more incidents of ownership, including the right to control the property in question.

{¶ 27} Nothing in Plummer's letter supports the conclusion that appellee asserted a right to control the fly ash in appellant's possession. The letter regards possible sale of the ash. The letter makes it clear that appellee neither approved nor disapproved of appellant's selling the fly ash because the issue was never discussed. The letter states in no uncertain terms that appellee did not own the fly ash that appellant had hauled away:

{¶ 28} "It has been and is the policy of Ohio Edison that the contractor is totally responsible for any ash removed from its plants. Therefore, the title for all the ash you have removed has passed to you. The revised language on the current purchase order as compared with the prior purchase order is merely a clarification of the terms which already existed."

{¶ 29} Plummer's letter also refers to appellee's practice of selling certain types of fly ash for use in construction or road-building operations:

{¶ 30} "Your statement about not being allowed to sell the material and having to pay Ohio Edison for the ash Tri–State sold is misleading and does not show that we have retained title to the ash. Tri–State did not have the approval of Ohio Edison to sell fly ash from either the Burger Plant or its disposal site because, for one reason, such possibility was never discussed. The price shown on the purchase order was for the disposal of ash and at no time was potential sales and their effect on the price considered. Furthermore, Ohio Edison's disposal purchase order with Tri–State does not give it access to all fly ash placed in the fly ash silo. It only covers ash for which Ohio Edison requires disposal services. The normal procedure for obtaining our approval to sell fly ash is to submit a proposal just as you did for the Burger bottom ash sales agreement. If the proposal is deemed to be of significant interest to Ohio Edison, permission would be granted. If your reference to buying ash applies to the dry fly ash sold to Tri–State for use in the asphalt road test project, then the statement needs clarification. In this case the ash was to be used in a construction application, not to be disposed of, and we routinely sell ash for such application."

{¶ 31} There is nothing in these comments that indicates that appellee believed that it had retained control over the fly ash that was in appellant's possession. Plummer does make a number of assertions in this portion of the letter: 1) some of the fly ash that appellee possessed had commercial value; 2) the parties never discussed whether appellant would sell fly ash to a secondary market; 3) the parties had no agreement about the secondary sale of fly ash; 4) the parties certainly had no agreement that appellant could sell fly ash that was not yet earmarked for disposal; and 5) appellant was not permitted to sell

appellee's fly ash that had not yet been earmarked for disposal. This letter expresses no opinion as to whether appellant could sell the fly ash already in its possession or whether appellant needed appellee's permission to do so. Appellee's silence on the matter cannot be construed as an assertion that appellee could control how appellant used the fly ash already in appellant's possession.

{¶ 32} More importantly, as pointed out by appellee, the parol evidence rule would prevent appellant from using extrinsic evidence, such as Plummer's deposition or letter, from contradicting or adding to the terms of the June 18, 1985, purchase order.

{¶ 33} "The parol evidence rule states that 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.' 11 Williston on Contracts (4 Ed.1999) 569–570, Section 33:4. Despite its name, the parol evidence rule is not a rule of evidence, nor is it a rule of interpretation or construction. *Charles A. Burton, Inc. v. Durkee* (1952), 158 Ohio St. 313, 324, 49 O.O. 174, 109 N.E.2d 265. 'The parol evidence rule is a rule of substantive law which, when applicable, defines the limits of a contract.' " *Galmish v. Cicchini* (2000), 90 Ohio St.3d 22, 27, 734 N.E.2d 782, quoting *Charles A. Burton, Inc.*, supra, 158 Ohio St. 313, 49 O.O. 174, 109 N.E.2d 265, paragraph one of the syllabus.

{¶ 34} Appellant argues that the parol evidence rule prohibits the court from considering *prior* or *contemporaneous* parol evidence only and does not prohibit extrinsic evidence from being introduced to clarify prior agreements. Appellant fails to consider that no external evidence of any kind can be used to change or alter the terms of a contract where those terms are unambiguous. *Illinois Controls, Inc. v. Langham* (1994), 70 Ohio St.3d 512, 521, 639 N.E.2d 771.

{¶ 35} Furthermore, even where parol evidence is admissible, it cannot be used to contradict express terms of a contract. *Pharmacia Hepar, Inc. v. Franklin* (1996), 111 Ohio App.3d 468, 475, 676 N.E.2d 587; *Ohio Historical Society v. General Maintenance & Engineering Co.* (1989), 65 Ohio App.3d 139, 146, 583 N.E.2d 340.

{¶ 36} The June 18, 1985, purchase order is clearly and unequivocally a contract for waste disposal. Appellee does not want the fly ash that it directed appellant to haul away. The purchase order leaves open the precise method of disposal that appellant should use, other than indicating that appellant must carry insurance and obey all laws when disposing of it. From appellee's perspective, the fly ash was disposed of when appellant took possession of the ash.

{¶ 37} Although there are no Ohio cases specifically on point, many foreign jurisdictions have concluded that a party or entity that generates refuse loses its interest in the refuse once it is collected by the disposal company, absent any agreement to the contrary. See *National Serv-All, Inc. v. Indiana Dept. of State Revenue* (Ind.Tax 1994), 644 N.E.2d 954, for a summary of the case law in this area.

{¶ 38} Under the "main purpose doctrine," a contract "must be construed as a whole and the intent of the parties must be determined from the entire instrument and not from detached parts." *Equitable Life Ins. Co. of Iowa v. Gerwick* (1934), 50 Ohio App. 277, 283, 3 O.O. 572, 197 N.E. 923; 11 Williston on Contracts (3 Ed.1968) 440, Section 32:9. Appellant has attempted to transform a very clear contract concerning the disposal of waste into a bailment contract or a consignment of goods contract. Appellant seems to be arguing that appellee did not really want the fly ash disposed of at all, but merely wanted appellant to store the fly ash, as in a bailment relationship. No amount of linguistic contortion can transform purchase order A–61573 into a bailment contract. The purchase order called for appellant to "remove and dispose of fly ash from the fly ash ponds at R.E. Burger Plant." There is no indication in the purchase order that appellant would ever want the fly ash to be returned, and thus, there is no bailment. *Collins v. Click Camera & Video, Inc.* (1993), 86 Ohio App.3d 826, 621 N.E.2d 1294. Appellant may not use parol evidence to contradict the fundamental nature of the contract and turn it into a bailment contract.

{¶ 39} For the reasons already stated, appellant's attempt to rely on subsequent purchase orders also runs headlong into the parol evidence rule. The June 18, 1985 purchase order is unambiguously a disposal contract. Appellant would have us use the clarifications in the subsequent purchase in order to interpret the earlier purchase order into something other than a disposal contract. As we have already stated, extrinsic evidence cannot be used to contradict the express terms of a contract. *Pharmacia Hepar, Inc.*, 111 Ohio App.3d at 475, 676 N.E.2d 587.

{¶ 40} In conclusion, appellant's evidence in opposition to appellee's motion for summary judgment does not raise any genuine issues of material fact about the nature of the disposal contract. Furthermore, appellant has inappropriately used the declaratory judgment process to attempt to bypass a number of highly regulated areas of the law. For both of these reasons, the trial court was correct in overruling appellant's motion for summary judgment and in granting summary judgment in favor of appellee. The February 19, 2002, judgment of the Belmont County Court of Common Pleas in Case No. 00–CV–138 is affirmed.

Judgment affirmed.

VUKOVICH, P.J., and GENE DONOFRIO, J., concur.