OPINION
{¶ 1} Plaintiff-appellant, UniFirst Corp. ("UniFirst"), appeals the decision of the Fayette County Court of Common Pleas finding for defendant-appellee, Yusa Corp. ("Yusa"), in a breach of contract action. We affirm the decision of the trial court.
 {¶ 2} Yusa is a supplier of parts to Honda of America. In 1988, Yusa entered into a contract with UniFirst for uniform service. At the time, Yusa had 60 to 80 employees. UniFirst agreed to provide, clean, and repair uniforms for Yusa employees. Each employee was to receive 13 sets of uniforms.
 {¶ 3} Each Yusa employee was provided with an individual locker. At the beginning of each week, UniFirst was to supply each employee with enough clean white uniforms to last the employee through the six-day workweek. At the end of each workday, employees placed the dirty uniforms in a bin for weekly pick up and cleaning by UniFirst.
 {¶ 4} Within a few years, the Yusa workforce expanded to approximately 700 employees. With the company's growth, Yusa began experiencing problems with a shortage of uniforms. Yusa employees complained that UniFirst did not place enough uniforms in employees' lockers for an entire workweek. UniFirst asserted that the shortage was a result of Yusa employees not turning the uniforms in for cleaning and repair.
 {¶ 5} When the uniform service contract was nearing its end, negotiations to renew the contact began. During contract negotiations, Yusa focused on the uniform shortage problem. UniFirst demonstrated a scanning process to Yusa executives whereby bar codes would be sewn on all Yusa uniforms to create a record of their location. UniFirst asserted that the scanning process would alleviate the shortage problem.
 {¶ 6} UniFirst and Yusa renewed their contract on July 18, 1995, for a five-year term. Yusa employees testified that UniFirst scanned the uniforms for a few weeks and then discontinued the scanning. Consequently, Yusa continued to experience problems with uniform shortages.
 {¶ 7} On January 26, 1998, Yusa executives met with UniFirst executives to discuss the uniform shortages and other problems. At the meeting, Yusa gave UniFirst 30 days to improve their performance to an acceptable level. Yusa stated that if no improvements were shown, Yusa would terminate the contract. Yusa employee complaints about the uniforms continued. On April 3, 1998, Yusa terminated the contract with UniFirst. Yusa then entered into a contract with Aramark for uniform services.
 {¶ 8} UniFirst sent a letter to Yusa asking for another meeting with Yusa. When it became apparent at the meeting that Yusa would not reconsider the termination, UniFirst stated they would seek damages. Approximately two years of the contract term remained. UniFirst conducted an accounting of the uniforms and sent an invoice to Yusa for $235,131.97 in damages. UniFirst's annual profit on Yusa account was $27,000. Yusa declined to pay the claimed damages.
 {¶ 9} UniFirst filed a complaint for damages and breach of contract on March 1, 1999. UniFirst moved for summary judgment on March 31, 1999. The motion was denied and a jury heard the matter on June 25, 2002. The jury returned a verdict for Yusa. UniFirst appeals the decision raising five assignments of error:
Assignment of Error No. 1:
 {¶ 10} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT IN ADMITTING EVIDENCE REGARDING STANDARDS IN THE GARMENT INDUSTRY THAT WAS [SIC] IRRELEVANT AND ELICITED FROM LAY WITNESSES RATHER THAN QUALIFIED EXPERTS."
 {¶ 11} UniFirst argues that the trial court abused its discretion by admitting evidence regarding standards in the garment industry from lay witnesses. UniFirst argues the evidence "had no tendency to make any fact of consequence more or less probable and/or was unfairly prejudicial, confusing or misleading."
 {¶ 12} The trial court has broad discretion in the admission and exclusion of evidence. Dardinger v. Anthem Blue Cross Blue Shield,98 Ohio St.3d 77, 106, 2002-Ohio-7113, ¶ 193. An appellate court will not disturb evidentiary rulings absent an abuse of discretion. Id. An abuse of discretion signifies more than merely an error in judgment; instead, it involves "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 13} The evidence in dispute consists of the testimony of Yusa employees regarding the difference between the services provided by UniFirst and Aramark. Barry Martin testified that UniFirst responded to complaints in "two weeks or longer" whereas Aramark responds "the very next week." Dana Garrison testified that with UniFirst she would "turn in seven pairs of pants and get back two or three." She further testified that the difference between UniFirst and Aramark service is like "night and day." Randy Taylor testified that he does "not even have to request a repair to be done. [When Aramark] see[s] something is wrong with [a garment,] they replace it with a new one."
 {¶ 14} Tamika Mallow and Michael Oyer testified how "life has been since Aramark has come on board." Michael Oyer, Yusa's Senior Manager of Administration, testified that when Yusa began in 1988 with approximately 80 employees, the uniform problems could be easily resolved. However, as Yusa grew, "the numbers would compound themselves. * * * [W]hen you get 200 associates, if you have 10% of the people having issues, that's 20 people that comes [sic] and complains. When you're at 400, that's 40. And that takes a lot of time and the more people that are experiencing problems, the greater the opportunity for them to share those concerns with other associates and I think from there things started to deteriorate." Oyer testified that with Aramark, "there are no issues."
 {¶ 15} Tamika Mallow testified that as part of her job description associates were "suppose to come to [her] with complaints." She testified that associates complained that when they turned in their uniforms for cleaning, they "would not receive everything back that they knew they threw in the [dirty] bin. Those are the main concerns, the [uniform] shortages." Mallow testified that with UniFirst services she spent "almost a whole days [sic] worth of work" dealing with "associates coming up, complaining of their shortages and so forth, logging the stuff in the log book, spending time with the route driver informing him of the problems." However, Mallow testified that with Aramark, "I probably spend maybe 10 minutes a week on uniforms now."
 {¶ 16} The trial court determined that the evidence regarding the difference between services provided by UniFirst and Aramark was "relevant to the standards * * * in the industry and [to] materiality of the breach." The trial court's decision to admit the evidence was not unreasonable, arbitrary, or unconscionable. See Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. Therefore, the trial court did not abuse its discretion. The first assignment of error is overruled.
Assignment of Error No. 2:
 {¶ 17} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT IN ADMITTING HEARSAY TESTIMONY."
 {¶ 18} UniFirst argues that the trial court admitted hearsay evidence over objection that magnified the alleged problems experienced by Yusa and UniFirst. UniFirst maintains that "the trial court's failure to prohibit the hearsay testimony was materially prejudicial and not harmless error."
 {¶ 19} A written or oral out-of-court statement, offered into evidence to prove the truth of the matter asserted, is considered inadmissible hearsay, unless the statement falls within a hearsay exception. See Evid.R. 801, 802. Evid.R. 803(3) provides that the following is excluded from the hearsay rule: "A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification or terms of declarant's will."
 {¶ 20} In this case, Michael Oyer was permitted to testify regarding what Yusa employees told him about their problems with the uniforms. The evidence reflects Michael Oyer's state of mind as it relates to his motive behind termination of the uniform service contract with UniFirst. The submission of this evidence appears to be a rebuttal of UniFirst's assertion that their performance was satisfactory. Accordingly, we do not believe that the trial court erred in admitting this testimony under Evid.R. 803(3).
 {¶ 21} Furthermore, the admission of this hearsay evidence, could not be considered prejudicial error. Michael Oyer, Barry Martin, Israel Woofter, and Tamika Mallow testified regarding their own problems with the condition of uniforms and the service provided by UniFirst before testifying to what other Yusa employees told them about the problems with their uniforms. Any error in the admission of hearsay is generally harmless when the evidence is cumulative in nature. See McDermott v.McDermott, Fulton App. No. F-02-023, 2003-Ohio-2361, at ¶ 22.
 {¶ 22} Given the fact that Michael Oyer, Barry Martin, Israel Woofter, and Tamika Mallow testified to their personal experiences, were present in court and subject to full cross-examination on the statements they made, we find that error, if any, in the admission of the testimony regarding other Yusa employees' problems with the uniforms is cumulative and harmless. Therefore, the second assignment of error is overruled.
Assignment of Error No. 3:
 {¶ 23} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT IN ADMITTING EVIDENCE OF CONTRACT TERMS THAT DIFFERED FROM THE TERMS OF AN UNAMBIGUOUS AND FINAL WRITTEN AGREEMENT."
 {¶ 24} UniFirst argues that the parol evidence rule prohibits the court from admitting contract terms that differed from the final written agreement. UniFirst maintains that the trial court erred in allowing Yusa to introduce evidence of "an ancillary agreement that UniFirst would use scanners to keep track of garments because no such term is contained in the unambiguous written contract between UniFirst and Yusa."
 {¶ 25} A written contract which appears to be complete and unambiguous on its face will be presumed to embody the final and complete expression of the parties' agreement. Cleland v. Cleland (C.P. 1958), 79 Ohio Law Abs. 566, 568; Ayres v. Cook (App. 1941), 37 Ohio Law Abs. 224, 227. The parol evidence rule states that "absent fraud, mistake or other invalidating cause, the parties' final writ ten integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements."Tri-State Group, Inc. v. Ohio Edison Co., 151 Ohio App.3d 1, 8,2002-Ohio-7297 at ¶ 33, citing, 11 Williston on Contracts (4 Ed. 1999) 569-570, Section 33:4. However, the parol evidence rule has no application to evidence of subse quent agreements or negotiations. Norrisv. Royal Indemnity Co. (1984), 20 Ohio App.3d 206, 208.
 {¶ 26} The rental agreement in question was executed on July 18, 1995. Yusa employees complained about not receiving enough uniforms to complete an entire workweek. UniFirst demonstrated a scanning process to Yusa that would keep a record of the location of a uniform. Nevertheless, no clause in the contract requires UniFirst to scan the uniforms.
 {¶ 27} However, a UniFirst document addressed to Tamika Mallow, Yusa's Relations Associate, states, "[i]n response to * * * our meeting on February 11, 1998, we have implemented scanning all garments weekly." Clearly, the agreement to scan "all garments weekly," entered into on February 11, 1998, was subsequent to the written agreement executed on July 18, 1995. Therefore, evidence of UniFirst's agreement to use scanners to keep track of Yusa garments does not violate the parol evidence rule. See id. Consequently, the trial court did not commit any error and the third assignment of error is overruled.
Assignment of Error No. 4:
 {¶ 28} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT IN DETERMINING THAT THE DAMAGES CLAUSE IN THE CONTRACT AT ISSUE WAS A PENALTY RATHER THAN LIQUIDATED DAMAGES."
 {¶ 29} UniFirst argues that the trial court erred in holding that the contract provision regarding damages in the event of an early termination was a penalty rather than a liquidated damages clause.
 {¶ 30} Parties are generally free to enter into contracts that include a provision which apportion damages in the event of default. LakeRidge Academy v. Carney (1993), 66 Ohio St.3d 376, 381. However, the question of whether a stipulation in a contract constitutes liquidated damages, a penalty, or a forfeiture is a question of law. Id. at 380. Therefore, an appellate court must review this question de novo. Id.
 {¶ 31} For public policy reasons, parties may not contract for liquidated damages if they constitute a penalty. Westbrock v. W. OhioHealth Care Corp. (2000), 137 Ohio App.3d 304, 322. Because the sole purpose of contract damages is to compensate the nonbreaching party for losses suffered as a result of a breach, "[p]unitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable." LakeRidge Academy v. Carney (1993), 66 Ohio St.3d 376, 381.
 {¶ 32} A remedy is considered to be punitive if it subjects the breaching party to a liability "disproportionate to the damage which could have been anticipated from breach of the contract." Id. However, parties may contract for liquidated damages to be paid in the event of a breach, when the provision does not disregard the principle of compensation. Westbrock, 137 Ohio App.3d at 322.
 {¶ 33} In this case, it is undisputed that the contract allowed for liquidated damages in the event of cancellation. UniFirst officials testified that their company's annual profit on the Yusa account was $27,000. They also testified that UniFirst incurred $235,131.97 in damages.
 {¶ 34} However, the jury found that Yusa was justified in its cancellation because UniFirst was in breach of the contract. The sole purpose of liquidated damages under a contract is to compensate the nonbreaching party for losses suffered as a result of a breach. See LakeRidge Academy, 66 Ohio St.3d at 381. As the party in breach of the contract, UniFirst is not entitled to liquidated damages. Therefore, even if the trial court's determination that the liquidated damages clause constituted a penalty was erron eous, UniFirst was not prejudiced by the determination. Consequently, the fourth assignment of error is overruled.
Assignment of Error No. 5:
 {¶ 35} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT IN FAILING TO HOLD THAT DEFENDANT-APPELLANT WAS ESTOPPED FROM TERMINATING THE CONTRACT AT ISSUE."
 {¶ 36} UniFirst argues that "the trial court should have determined that Yusa was estopped from terminating the Contract due to having promised that it would only terminate if UniFirst failed to improve its service." UniFirst argues that Yusa's promise not to terminate "did induce action on the part of UniFirst" and injustice can only be avoided by enforcement of the promise.
 {¶ 37} To make a prima facie case for promissory estoppel UniFirst must show: (1) a clear and unambiguous promise; (2) reliance upon the promise; (3) reliance that is both reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of reliance on the promise. Weiper v. W.A. Hill Associates (1995), 104 Ohio App.3d 250, 260.
 {¶ 38} UniFirst argues it "substantially increas[ed] the rollover revenue into replacing Yusa uniforms" in reliance upon Yusa's clear and unambiguous promise not to terminate the contract. However, the action UniFirst claims was induced by Yusa's promise was an action that UniFirst was already required to perform under contract. The contract states, "[a]ny garments that require replacement due to normal wear, will be replaced by [UniFirst]."
 {¶ 39} UniFirst had a pre-existing duty under the contract to replace worn or damaged uniforms. Therefore, UniFirst was not induced to replace Yusa uniforms by Yusa's promise. Consequently, because UniFirst was already bound to perform uniform replacements under the contract, UniFirst cannot show an injury as a result of reliance on Yusa's promise. The trial court correctly determined that Yusa was not estopped from terminating the uniform service contract. Accordingly, the fifth assignment of error is overruled.
Judgment affirmed.
YOUNG and POWELL, JJ., concur.