[Cite as *McCloskey v. McCloskey*, 2021-Ohio-4158.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| JAMES MCCLOSKEY, DECEASED | : | |
| | : | |
| Plaintiff-Appellant/Cross-Appellee | : | Appellate Case No. 29055 |
| | : | |
| | : | Trial Court Case No. 2011-LS-00027 |
| v. | : | |
| | : | (Domestic Relations Appeal) |
| LINDA MCCLOSKEY, et al. | : | |
| | : | |
| Defendants-Appellees/Cross-Appellants | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of November, 2021.

. . . . . . . . . . .

RICHARD L. CARR, JR., Atty. Reg. No. 0003180 and DAVID M. RICKERT, Atty. Reg. No. 0010483, 110 North Main Street, Suite 1000, Dayton, Ohio 45402
     Attorneys for Plaintiff-Appellant/Cross-Appellee

MICHAEL P. MCNAMEE, Atty. Reg. No. 0043861, ALEXANDER W. CLOONAN, Atty. Reg. No. 0095690 and F. ANN CROSSMAN, Atty. Reg. No. 0043525, 2625 Commons Boulevard, Beavercreek, Ohio 45431
     Attorneys for Defendants-Appellees/Cross-Appellants

. . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} This matter is on appeal from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which interpreted a disputed term contained in the final judgment and decree of divorce of James and Linda McCloskey. For the following reasons, the judgment of the domestic relations court will be modified in part and affirmed as modified.

## I.      Facts and Procedural Background

{¶ 2} Linda and James McCloskey were married in 1983 and divorced in 2014. They had two children, Michael and Janice, who were adults at the time of the divorce. Michael has severe autism, which renders him nonverbal and unable to care for himself. Thus, Linda and James recognized the need to provide monetary support to Michael for his lifetime.   To that end, the final judgment and decree of divorce contained the following provision:

18.  **DESIGNATION OF THE MICHAEL J. MCCLOSKEY IRREVOCABLE LIVING TRUST AS BENEFICIARY TO THE PARTIES' ESTATES:**   Both parties agree that they will designate the Michael J. McCloskey Irrevocable Living Trust, as beneficiary under a will and trust for one-half of the value of their estates at the time of their death.   Said estate shall include one-half (1/2) of all the parties' assets at the time that [sic] their death, as long as Michael survives them.   Further, the parties' obligation to designate the Michael J. McCloskey Irrevocable Living Trust as beneficiary to one-half (1/2) of the parties' estate upon their death shall be an irrevocable

designation. If, [sic] either party fails to designate the Michael J. McCloskey Irrevocable Living Trust as a beneficiary to one-half (1/2) of their estate, then the Michael J. McCloskey Irrevocable Living Trust, through the trustee of said trust, shall have the right to make a claim against either parties' estate in the amount of one-half (1/2) of the value of that parties' estate.

{¶ 3} On the same day that the decree was filed, Linda executed a document titled "The Michael J. McCloskey Irrevocable Living Trust, dated the 14th Day of October, 2014" ("the 2014 MJM Trust"). That trust named Janice as the residuary beneficiary. The same day, Linda also executed her own trust, which named Janice and the 2014 MJM Trust as equal beneficiaries.

{¶ 4} James died in June 2017. At that time he had a will and a trust, both of which had been executed in 2013, prior to the divorce. Neither document conformed to the terms of the divorce decree regarding the funding of an irrevocable trust for Michael. The will left all tangible personal property to Janice; the will further provided that all residuary assets would go into James's trust. James's trust specifically excluded Michael as a beneficiary. Janice, who was named as executor of the will and trustee of the trust, filed an estate action in the Montgomery County Court of Common Pleas, Probate Division. Of note, James owned a life insurance policy which served as security for his spousal support obligation pursuant to the terms of the divorce decree. In accordance with the divorce decree, Janice paid James's remaining spousal support obligation from the proceeds of that policy, and she distributed the remainder of the policy's death benefits, $53,641.78, to the 2014 MJM Trust.

{¶ 5} Because James failed to comply with Paragraph 18 of the divorce decree, Linda filed a claim in James's probate case. Janice and Linda expressed disagreement as to which of James's assets were subject to Paragraph 18. Therefore, the probate court advised them to seek clarification of the terms of Paragraph 18 in the domestic relations court.

{¶ 6} In June 2018, Linda filed a motion in the domestic relations case to add Janice, in her capacity as executor of James's estate and as trustee of James's trust, as a third-party defendant. She also filed a motion seeking to hold Janice, in her capacity as executor and trustee, in contempt for the failure to comply with the divorce decree. The motion for contempt sought an award of attorney fees. Further pleadings were filed in the matter indicating a disagreement over the definition of "estate" as used in Paragraph 18 of the divorce decree. According to Linda, the intent of the decree was to require each party to place one-half of all their assets into the 2014 MJM Trust. On behalf of James's estate and trust, Janice asserted that the decree merely required the parties to place one-half of their probate estate assets into a trust for Michael's benefit.

{¶ 7} At some point thereafter, Linda and Janice became estranged. In response, Linda executed a new trust titled "The Michael J. McCloskey Irrevocable Living Trust dated December 28, 2018" ("the 2018 MJM Trust"). Concurrently, Linda executed another trust, titled the "L.J.W. Revocable Living Trust Dated December 28, 2018" (the L.J.W. Trust"). The L.J.W. Trust complied with Paragraph 18 of the divorce decree. Indeed, the L.J.W. Trust provided that the entirety of the trust assets would be distributed into the 2018 MJM Trust so long as Michael survived Linda. If Michael did not survive her, Linda's trust named Janice's children as beneficiaries. Linda did not make Janice a

beneficiary under either of the 2018 trusts.

{¶ 8} In August 2019, the domestic relations court issued a pretrial order which set a hearing date of January 8, 2020, and required the parties to disclose expert witnesses by September 27, 2019. Linda timely filed her expert witness disclosure. However, the disclosure did not identify an expert regarding her claim for attorney fees.

{¶ 9} On December 23, 2019, Linda filed a motion seeking an award of "attorney fees pursuant to R.C. 3105.73(B)." She also filed a pretrial statement identifying attorney Matthew Sorg as an expert witness regarding attorney fees.

{¶ 10} Thereafter, Janice filed a motion in limine which, in part, sought an order preventing Linda from introducing Sorg's testimony regarding fees due to Linda's failure to timely identify him as an expert witness. The motion also noted that Linda did not provide her statement of attorney fees until five days prior to the January 8, 2020 hearing date.

{¶ 11} Hearings on the motions were conducted in 2020. The magistrate permitted Linda to proffer Sorg's testimony on the record. Thereafter, the magistrate issued a decision which stated, in part, as follows:

> Having considered all of the relevant testimony and exhibits, this magistrate finds that Linda's interpretation [of the divorce decree] is correct. This magistrate finds that the definition of estate in Paragraph 18 underlines the broad intent of benefitting the Michael J. McCloskey Irrevocable Trust with half of all assets being contributed by each party at the time of their death, which would include assets in which James had an equitable interest at the time of his death. This definition would be superfluous if estate were

to be read merely as "probate estate."

Furthermore, this finding is reinforced by considering the purpose of the divorce decree provisions at issue, and the practical effect of the competing interpretations. Based upon Janice's interpretation, James could have ensured that no assets flowed into the probate estate, and hence that there would be nothing to divide with Michael's trust. The fact that James did not completely eviscerate the assets that would flow into the trust does not invalidate that interpretation. That interpretation is completely inconsistent with the point and expressed purpose of that part of the divorce decree.

However, this magistrate finds that Janice, as the executor of James' estate, has not been ordered to effectuate the intent and meaning of Paragraph 18 of the divorce decree yet (unlike James himself), and so she cannot be found in contempt. This magistrate therefore finds it appropriate to order Janice to comply with the terms of the divorce decree and through probate court effectuate the meaning of Paragraph 18 as determined by this court herein. Any non-compliance with these orders may then lead to further contempt proceedings.

{¶ 12} The magistrate ordered the parties to utilize the 2014 MJM Trust to effectuate the terms of Paragraph 18 of the decree. The magistrate also denied both of Linda's requests for attorney fees.

{¶ 13} Both parties objected to the magistrate's decision. Linda objected to the magistrate's finding that Paragraph 18 of the divorce decree referred to the 2014 MJM

Trust. She argued the decree did not designate any specific trust to be the recipient of one-half of the parties' estates and that she should be permitted to utilize the 2018 MJM Trust as the recipient for her assets. She further argued the magistrate erred by denying her requests for attorney fees. Janice objected to the magistrate's decision regarding the meaning of the term "estate" as used in Paragraph 18 of the divorce decree and argued that the decree merely required the parties to place one-half of their probate estates into a trust for the benefit of Michael.

{¶ 14} In its decision adopting the magistrate's interpretation, the domestic relations court denied Linda's requests for attorney fees. Further, the court concluded that Paragraph 18 of the divorce decree was intended to include all "assets in which [the parties had] an equitable interest at the time of their death, such as assets in their own trust and any assets transferred by beneficiary designations." The court, however, altered the magistrate's decision to utilize the 2014 MJM Trust. Instead, the domestic relations court's decision stated:

> Since the parties did not collaborate on the establishment of a Michael J. McCloskey Irrevocable Living Trust as required by Paragraph 18 of the Final Judgment and Decree of Divorce filed October 14, 2014, this court finds that it is inequitable to name either the 2014 Michael Trust or the 2018 Michael Trust, as established by Linda, to be the recipient of Michael's portion of the parties' estates. Therefore, this court orders that a Michael J. McCloskey Irrevocable Living Trust be established by Linda at this time. The new Michael J. McCloskey Irrevocable Living Trust is to be designated by Linda and the estate of James P. McCloskey as the beneficiary of one half of the

value of their respective estates as ordered by the Final Judgment and Decree of Divorce and interpreted as such by this court. There shall be no secondary beneficiaries named. Upon the death of Michael, the trust shall terminate and the remainder, if any, shall pass by the laws of intestacy.

{¶ 15} Janice appealed, and Linda cross-appealed.

## II. Paragraph 18 Interpretation

{¶ 16} Janice asserts the following as her first assignment of error:

THE LOWER COURT ERRED WHEN IT IGNORED THE PLAIN MEANING OF THE PARTIES' AGREEMENT AND JUDICIALLY CHANGED THE PARTIES' DIVORCE DECREE

{¶ 17} Janice contends the domestic relations court erred in determining that the phrase "one-half the value of their estates at the time of their death" referred not only to James's and Linda's probate assets, but also to assets held in their personal trusts. In support, she cites *Guagenti v. Guagenti*, 3d Dist. Allen No. 1-16-47, 2017-Ohio-2706, for the proposition that the assets held in an irrevocable trust are owned by the trust and are not subject to equitable division in a divorce. *Id.* at ¶ 70.

{¶ 18} We begin by noting that both Janice and Linda assert that the word "estate" as used in the divorce decree was unambiguous, and as such was not susceptible to interpretation by the court. However, ambiguity exists when the language used is susceptible to two or more reasonable interpretations. *Towne v. Progressive Ins. Co.*, 12th Dist. Butler No. CA2005-02-031, 2005-Ohio-7030, ¶ 9. Here, Janice and Linda assign different, and reasonable, meanings to "estate," thereby demonstrating ambiguity.

{¶ 19} "Ohio law clearly establishes that a judgment may be interpreted if it is ambiguous. If there is good faith confusion over the interpretation to be given to a particular clause of a divorce decree, the trial court in enforcing that decree has the power to hear the matter, clarify the confusion, and resolve the dispute." *Landry v. Landry*, 2017-Ohio-564, 85 N.E.3d 313, ¶ 7 (2d Dist.), quoting *Quisenberry v. Quisenberry*, 91 Ohio App.3d 341, 348, 632 N.E.2d 916 (2d Dist.1993). When an ambiguity exists, extrinsic evidence is admissible in order to interpret, but not contradict, ambiguous terms. *Pharmacia Hepar, Inc. v. Franklin*, 111 Ohio App.3d 468, 475, 676 N.E.2d 587 (12th Dist.1996). A domestic relations court has broad discretion to clarify ambiguous language and may do so by considering the intent of the parties and the equities involved. *Meyer v. Meyer*, 2016-Ohio-8100, 76 N.E.3d 743, ¶ 14 (12th Dist.).

{¶ 20} Janice's reliance on *Guagenti* is misplaced. In *Guagenti*, a divorce case, the wife asserted that she was entitled to an equitable division of the assets held in an irrevocable trust created by the husband's father, of which the husband was the trustee and beneficiary. The husband, as trustee, had the discretion "to distribute [the trust's] accumulated income to himself for his health, support and maintenance." *Id.* at ¶ 62. Thus, by the wife's reckoning, the husband was, in reality, the owner of the trust. The Third District did not accept the wife's argument, concluding that the "assets held by [the] trust are not property owned by either spouse, but rather property owned by a third party, namely the trust itself and as such cannot be subject to equitable division in a divorce." *Id.* at ¶ 70. *Guagenti* concerned whether, under the described circumstances, the assets of the irrevocable trust were appropriately classified as marital assets subject to equitable distribution. In contrast, the issue in this case is the interpretation of an ambiguous

divorce decree provision, with this interpretation being guided by a determination of the parties' intent regarding what assets were subject to inclusion in a trust for Michael's benefit.

{¶ 21} The magistrate heard testimony from the attorneys representing James and Linda during the divorce action regarding the parties' intent when agreeing to Paragraph 18. The attorneys agreed that the intent of the provision was to provide for Michael during his lifetime. Their testimony did not indicate that Paragraph 18 was limited to probate assets.

{¶ 22} A reading of Paragraph 18 demonstrates that the parties stated that the trust for Michael would receive one-half of "the value of their estates at the time of their death." This language could, as asserted by Janice, mean that they intended to fund the trust with one-half of their probate estates only. However, Paragraph 18 does not contain such a limitation. Further, Paragraph 18 goes on to define "estate" to include "one-half (1/2) of all the parties' assets at the time [of] their death[.]" Based on this language and the evidence presented at the hearing, we cannot conclude that the magistrate or the domestic relations court erred in finding that Paragraph 18 expressed the parties' intent to fund the trust for Michael with one-half of the value of all their assets rather than merely one-half of their probate assets. As noted by the court, if we read this provision as referring only to the parties' probate assets, the parties could easily have thwarted the intent of the provision by limiting the assets flowing into their probate estates.

{¶ 23} Based on the evidence in this record, we conclude that the domestic relations court did not err in finding that the parties intended to fund a trust for Michael's benefit and that the agreement encompassed all of their assets, not merely their probate

assets.   Accordingly, Janice's first assignment of error is overruled.

### III.      Trial Court's Order Requiring Creation of a New Trust

{¶ 24} Janice's second assignment of error states as follows:

THE LOWER COURT ERRED BY IGNORING THE PARTIES' AGREED TRUST AS REFERENCED IN THEIR DIVORCE DECREE AND ORDERING THE CREATION OF A TOTALLY DIFFERENT TRUST WHICH OPERATES IN CONTRAVENTION OF THE PARTIES' AGREEMENT

{¶ 25} Janice contends that the domestic relations court erred by requiring the parties to create a new trust for Michael's benefit.   In support, she argues the parties intended the use of a specific trust because the divorce decree unambiguously referred to "the Michael J. McCloskey Trust," rather than "a" or "any" MJM Trust.   Thus, Janice argues that the court should have designated the 2014 MJM Trust as the intended trust because it was executed by Linda the same day as the divorce decree was filed, and James did not object to it or execute a separate trust.   She further notes, as stated above, that the residuary proceeds of James's life insurance policy were deposited into that trust after James died.

{¶ 26} We again conclude that the divorce decree was ambiguous concerning the establishment of a trust for Michael.   As Janice noted, the decree did reference "the Michael J. McCloskey Irrevocable Living Trust."   The domestic relations court stated that the language "perhaps impl[ies] that the parties would create the trust together."   But we find the language could also be read to imply a specific trust already existed at the time

the decree was filed. However, as noted above, Linda did not execute the 2014 MJM Trust until a few hours after the filing of the divorce decree.

{¶ 27} As noted by Linda, the 2014 MJM Trust made Janice the residuary beneficiary, thereby allowing her to inherit assets from both James and Linda. Linda objects to the use of this trust, arguing that it interferes with her estate planning as she does not now wish to leave any of her assets to Janice. Conversely, Janice objects to the terms of the 2018 MJM Trust, which identifies Linda as the residuary beneficiary and which, of course, creates the possibility of a scenario in which Linda, upon Michael's death, would receive the funds that James had contributed to the trust.

{¶ 28} The domestic relations court reasonably and appropriately concluded that James, by agreeing to Paragraph 18, did not intend to create a situation that would allow Linda, upon Michael's death, to be the beneficiary of the assets he placed into the trust for Michael's benefit. The court also reasonably and appropriately concluded that Linda, by agreeing to Paragraph 18, did not intend to limit her estate planning options beyond the benefit afforded Michael. The domestic relations court attempted to resolve the dilemma by ordering the creation of a new trust to benefit Michael and further ordering that, upon Michael's death, the trust would terminate and any remaining funds would "pass by the laws of intestacy." But, assuming Michael dies first, this would allow Linda, as Michael's surviving parent, to inherit funds that James's estate must contribute. As noted, such a result would be contrary to James's intent when agreeing to Paragraph 18.

{¶ 29} We conclude that the more efficient and reasonable solution is to order Linda to use the 2018 MJM Trust to comply with Paragraph 18. James's estate, in order to comply with Paragraph 18, is ordered to create a new trust using the currently required

language to ensure Michael's access to Medicaid benefits. Consistent with James's intent, the residual beneficiary of the trust will be Janice, or, if she dies before any residuary distribution, her children. This solution ensures compliance with Paragraph 18 while not imposing any unintended restrictions regarding residual beneficiaries.

{¶ 30} Janice's second assignment of error is overruled, but the trial court's decision is modified as indicated.

### IV. Attorney Fees

{¶ 31} Linda's assignment of error on her cross-appeal states:

THE TRIAL COURT DID ERR IN FINDING THAT LINDA WAS NOT ENTITLED TO AN AWARD OF ATTORNEYS' FEES

{¶ 32} Linda asserts that the domestic relations court erred by denying her requests for attorney fees.

{¶ 33} As noted above, Linda's original motion for contempt sought an award of attorney fees. Additionally, on December 23, 2019, Linda filed a motion seeking an award of "her attorney fees pursuant to R.C. 3105.73(B)."[1] The motion stated that Linda was entitled to an award of fees "due to the conduct of the counsel for the probate estate and the beneficiary Janice Hanahan in the probate matter." On January 2, 2020, Linda filed a pretrial statement in which she stated that she was entitled to fees due to James's contempt for failing to comply with the divorce decree and due to the actions of the

---

[1] R.C. 3105.73(B) allows the domestic relations court to award reasonable attorney fees in any "post-decree motion or proceeding that arises out of an action for divorce" so long as such an award is equitable.

attorney for the estate "in his capacity as attorney for the probate estate." She also argued that she was entitled to fees as provided by R.C. 3105.73(B) because Janice's attempt to modify the language in the decree by claiming that Paragraph 18 referred solely to the parties' probate estates violated R.C. 3105.171(I). [2] The pretrial statement identified attorney Matthew Sorg as a witness who would "testify as to the attorneys' fees incurred."

{¶ 34} Thereafter, Janice filed a motion in limine which sought, in part, an order preventing Linda from introducing Sorg's testimony regarding fees due to Linda's failure to timely identify him as an expert witness. The motion also noted that Linda did not provide her statement of attorney fees until five days prior to the January 8, 2020 hearing date. The magistrate sustained the motion in limine but permitted Linda to make a proffer of Sorg's testimony for purposes of appeal.

{¶ 35} Regarding the motion for fees contained in the original contempt motion, the magistrate found that Janice, as executor of James's estate and trustee of his trust, had not been ordered to comply with Paragraph 18 of the decree, and thus could not be in contempt of any court order. Given this conclusion, the magistrate and the court found that an award of attorney fees was not merited. We agree. Further, there was no showing that Janice did not intend to comply with the terms of Paragraph 18, merely that she did not agree with Linda's interpretation of that provision.

{¶ 36} We next address Linda's subsequent motion for an award of attorney fees as permitted by R.C. 3105.73(B) We agree that the motion and the disclosure of an

---

[2] R.C. 3105.171(I) states: "A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court except upon the express written consent or agreement to the modification by both spouses."

expert was untimely and that Linda failed to seek leave to file out of time and failed to provide good cause for the late filing. Given this, we cannot say that the domestic relations court abused its discretion in denying the request. Furthermore, from our review of her filings in regard to the second motion for fees, we conclude Linda's justification for the fees was based upon events that occurred in the probate court. Obviously, the domestic relations court was not the appropriate forum for determining whether fees for actions in the probate court were warranted.

**{¶ 37}** Based upon this record, we conclude that the domestic relations court did not err or abuse its discretion in denying Linda's request for attorney fees.

**{¶ 38}** According, Linda's sole assignment of error on cross-appeal is overruled.

## V. Conclusion

**{¶ 39}** The parties' assignments of error are overruled. But the domestic relations court's order is modified to order Linda to use the 2018 MJM Trust to comply with Paragraph 18, and to order James's estate to create a new Medicaid-compliant trust to comply with Paragraph 18. The court's judgment is affirmed as modified. When James's estate has executed the required trust document, it shall submit that document to the domestic relations court for it to verify that the document complies with the terms of its judgment, as modified by this court.

. . . . . . . . . . . . .

HALL, J. and EPLEY, J., concur.

Copies sent to:

Richard L. Carr, Jr.
David M. Rickert
Michael P. McNamee
Alexander W. Cloonan
F. Ann Crossman
W. Michael Conway
Hon. Timothy D. Wood