[Cite as *McCloskey v. McCloskey*, 2024-Ohio-1900.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| JAMES MCCLOSKEY | : | |
| | : | |
| Appellee | : | C.A. No. 29940 |
| | : | |
| v. | : | Trial Court Case No. 2011 LS 00027 |
| | : | |
| LINDA MCCLOSKEY | : | (Appeal from Common Pleas Court-Domestic Relations) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 17, 2024

. . . . . . . . . . .

MICHAEL P. MCNAMEE & ALEXANDER W. CLOONAN, Attorneys for Appellant

RICHARD L. CARR & DAVID M. RICKERT, Attorneys for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Appellant Linda McCloskey appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which refused to clarify a disputed term contained in the final judgment and decree of divorce of James McCloskey and Linda McCloskey and overruled Linda's motion to find third-party defendant Janice Hanahan (f.k.a. Janice McCloskey), in her capacity as executor of James's estate and

trustee of James's trust, in contempt of court.[1]   For the following reasons, the judgment of the trial court will be affirmed in part and reversed in part, and the matter will be remanded for further proceedings consistent with this opinion.

### I.    Facts and Procedural History

{¶ 2} This is the second appeal involving an interpretation of the McCloskeys' divorce decree and motions for contempt filed by Linda.   The factual and procedural history of this case was set forth in our November 24, 2021 opinion.   *McCloskey v. McCloskey*, 2d Dist. Montgomery No. 29055, 2021-Ohio-4158.   For purposes of clarity and convenience, we will repeat the relevant history here.

{¶ 3} Linda and James were married in 1983 and divorced in 2014.   They had two children, Michael and Janice, who were adults at the time of the divorce.   Michael has severe autism, which renders him nonverbal and unable to care for himself.   Linda and James recognized the need to provide monetary support to Michael during his lifetime. To that end, the final judgment and decree of divorce contained the following provision:

18. DESIGNATION OF THE MICHAEL J. MCCLOSKEY IRREVOCABLE

LIVING TRUST AS BENEFICIARY TO THE PARTIES' ESTATES: Both

parties agree that they will designate the Michael J. McCloskey Irrevocable

Living Trust, as beneficiary under a will and trust for one-half of the value of

their estates at the time of their death.   Said estate shall include one-half

(1/2) of all the parties' assets at the time that [sic] their death, as long as

Michael survives them.   Further, the parties' obligation to designate the

---

[1] For purposes of convenience, individuals will be identified by their first names.

Michael J. McCloskey Irrevocable Living Trust as beneficiary to one-half (1/2) of the parties' estate upon their death shall be an irrevocable designation. If, [sic] either party fails to designate the Michael J. McCloskey Irrevocable Living Trust as a beneficiary to one-half (1/2) of their estate, then the Michael J. McCloskey Irrevocable Living Trust, through the trustee of said trust, shall have the right to make a claim against either parties' estate in the amount of one-half (1/2) of the value of that parties' estate.

{¶ 4} On the same day that the divorce decree was filed, Linda executed a document titled "The Michael J. McCloskey Irrevocable Living Trust" ("the 2014 MJM Trust"), which named Janice as the residuary beneficiary. Linda also executed her own trust, which named Janice and the 2014 MJM Trust as equal beneficiaries.

{¶ 5} On the other hand, despite the language in Paragraph 18 of the divorce decree, James neither formed a trust for the benefit of Michael nor designated the Michael J. McCloskey Irrevocable Living Trust as a beneficiary in his will or trust.

{¶ 6} James died in June 2017. His will, which had last been modified in 2013 prior to the finalization of the divorce, left all tangible personal property to Janice. The will further provided that all residuary assets would go into the James P. McCloskey Trust ("James's Trust"). Like his will, James's Trust was last modified in 2013 prior to the finalization of the divorce. James's Trust provided that, upon his death, after certain expenses and taxes had been satisfied, the entire Trust estate was to go to Janice, or to her issue per stirpes. James's Trust stated that it intentionally left no provision for

Michael, "not for lack of love or affection for him, but because, in James' opinion, MICHAEL J. McCLOSKEY is otherwise adequately provided for financially."

{¶ 7} Janice, who was named as executor of James's will and trustee of James's Trust, filed an estate action in the Montgomery County Court of Common Pleas, Probate Division. Because James had failed to comply with Paragraph 18 of the divorce decree, Linda, as trustee of the 2014 MJM Trust and guardian of Michael, filed a claim in James's probate case. Janice and Linda disagreed as to which of James's assets were subject to Paragraph 18. Therefore, the probate court advised them to seek clarification of the terms of Paragraph 18 of the divorce decree in the domestic relations court.

{¶ 8} Linda filed a motion in the divorce case to add Janice, in her capacity as executor of James's estate and as trustee of James's Trust, as a third-party defendant. She also filed a motion seeking to hold Janice, in her capacity as executor and trustee, in contempt for failing to comply with the divorce decree. Further pleadings were filed in the matter relating to the disagreement over the definition of "estate" as used in Paragraph 18 of the divorce decree. According to Linda, the intent of the decree was to require each party to place one-half of all their assets into the 2014 MJM Trust. Janice asserted that the decree merely required the parties to place one-half of their probate estate assets into a trust for Michael's benefit.

{¶ 9} Subsequently, Linda and Janice became estranged. Linda then executed the following two new trusts: 1) "The Michael J. McCloskey Irrevocable Living Trust dated December 28, 2018" ("the 2018 MJM Trust"); and 2) "L.J.W. Revocable Living Trust Dated December 28, 2018" ("the LJW Trust"). The LJW Trust provided that the entirety of the

trust's assets would be distributed into the 2018 MJM Trust so long as Michael survived Linda. If Michael did not survive her, the LJW Trust named Janice's children as beneficiaries.

{¶ 10} Following hearings on the pending motions, the magistrate issued a decision that found "the definition of estate in Paragraph 18 underlies the broad intent of benefitting the Michael J. McCloskey Irrevocable Trust with half of all assets being contributed by each party at the time of their death, which would include assets in which James had an equitable interest at the time of his death. This definition would be superfluous if estate were to be read merely as 'probate estate.' " Magistrate Decision (October 22, 2020), p. 5. The magistrate also found that Janice, as the executor of James's estate, had not yet been ordered to effectuate the intent and meaning of Paragraph 18 of the divorce decree, so she could not be found in contempt. The magistrate then ordered Janice to comply with the terms of the divorce decree and to effectuate the meaning of Paragraph 18 through the probate court.

{¶ 11} Both parties objected to the magistrate's decision. Linda objected to the magistrate's finding that Paragraph 18 of the divorce decree referred to the 2014 MJM Trust. She argued the decree did not designate any specific trust to be the recipient of one-half of the parties' estates and that she should be permitted to utilize the 2018 MJM Trust as the recipient for her assets. Janice objected to the magistrate's decision regarding the meaning of the term "estate" as used in Paragraph 18 of the divorce decree and argued that the decree merely required the parties to place one-half of their probate estate into a trust for the benefit of Michael.

**{¶ 12}** The domestic relations court agreed with the magistrate's interpretation that Paragraph 18 of the divorce decree was intended to include all "assets in which [the parties had] an equitable interest at the time of their death, such as assets in their own trust and any assets transferred by beneficiary designations." Decision and Judgment (February 19, 2021), p. 15. The court, however, did not adopt the magistrate's decision to utilize the 2014 MJM Trust. Instead, the domestic relations court ordered "that a Michael J. McCloskey Irrevocable Living Trust be established by Linda at this time. The new Michael J. McCloskey Irrevocable Living Trust is to be designated by Linda and the estate of James P. McCloskey as the beneficiary of one half of the value of their respective estates as ordered by the Final Judgment and Decree of Divorce and interpreted as such by this court. There shall be no secondary beneficiaries named. Upon the death of Michael, the trust shall terminate and the remainder, if any, shall pass by the laws of intestacy." Id. Janice appealed, and Linda cross-appealed.

**{¶ 13}** In our November 24, 2021 opinion, we determined that the domestic relations court had not erred in finding that the parties intended to fund a trust for Michael's benefit and that "the agreement encompassed all of their assets, not merely their probate assets." McCloskey, 2d Dist. Montgomery No. 29055, 2021-Ohio-4158, at ¶ 23. Although the domestic relations court had ordered the parties to create a new trust for Michael's benefit to comply with Paragraph 18 of the divorce decree, we concluded that in order for Linda to comply with Paragraph 18, she needed to use the 2018 MJM Trust. James's estate, on the other hand, was ordered to create a new trust using the necessary language to ensure Michael's access to Medicaid benefits and to make Janice the

residual beneficiary of the trust, or if she died before any residuary distribution, then to her children. *Id.* at ¶ 29.

{¶ 14} Upon remand, the trial court ordered the parties to comply with this Court's mandate. Specifically, Linda was ordered to effectuate the 2018 MJM Trust to comply with Paragraph 18 of the divorce decree, which required designation of the Michael J. McCloskey Irrevocable Living Trust as beneficiary to the parties' estates. Similarly, James's estate was ordered to create a new trust to comply with Paragraph 18 of the divorce decree using language to ensure Michael's access to Medicaid benefits, which also required designation of the Michael J. McCloskey Irrevocable Living Trust as beneficiary to the parties' estates. Additionally, under the trust created by James's estate, the residual beneficiary of the trust was ordered to be Janice, or if she died before any residuary distribution, then her children.

{¶ 15} On January 7, 2022, James's estate filed a notice of compliance and attached a copy of the Michael J. McCloskey Trust Agreement created in January 2022 ("the January 2022 MJM Trust"). That same day, Linda filed a notice of compliance stating that the 2018 MJM Trust complied with Paragraph 18 of the divorce decree.

{¶ 16} On July 1, 2022, Linda filed a motion asking the trial court to find Janice in contempt for failing to satisfy the court's order to comply with Paragraph 18 of the divorce decree. Linda argued that the probate court only had jurisdiction to enforce the order as it related to distribution of the estate assets, not non-probate estate assets. Therefore, she requested the trial court to order distribution of the non-probate estate assets to properly fund the Michael J. McCloskey Trust. According to Linda, the January 2022

MJM Trust could not be properly funded because the settlors of that trust needed to be Janice individually and in her capacities as executor of the Estate of James P. McCloskey and as Trustee of the James P. McCloskey Trust.   Because the January 2022 MJM Trust did not comply with the court's orders and had not yet been funded, Linda asked the trial court to find Janice in contempt of court.   She further requested Janice pay her attorney fees.

{¶ 17} Janice opposed Linda's motion, contending that the January 2022 MJM Trust complied with Paragraph 18 of the divorce decree.   Janice acknowledged that the Trust had yet to be funded, explaining the delay was caused by the non-liquid nature of the assets in James's estate.   Janice also claimed that the parties had not agreed on the amounts to be entered into the Michael J. McCloskey Trust due to uncertainty about whether the amounts should be based on the gross value of the assets or the net value of the assets of James's estate.

{¶ 18} On September 21, 2022, the parties entered an agreed order, which stated in part:

1. Third-Party Defendant has caused the revised "The Michael J. McCloskey Irrevocable Trust Agreement" as modified and agreed to by the parties, to be executed and accepted by the trust's trustee, LCNB National Bank.

2. Third-Party Defendant shall cause the sum of $100,000.00 to be deposited into the aforementioned "The Michael J. McCloskey Irrevocable Trust Agreement."   The parties expressly agree that this

$100,000.00 is not intended to be a full and complete settlement of the funds which will ultimately be deposited into the aforementioned trust.

{¶ 19} Although Janice had maintained that the January 2022 MJM Trust fully complied with Paragraph 18 of the divorce decree, the parties agreed to a modification of the trust, which resulted in the Michael J. McCloskey Irrevocable Trust Agreement dated September 12, 2022 ("the September 2022 MJM Trust"). Additionally, Janice deposited $100,000 into the September 2022 MJM Trust pursuant to the September 21, 2022 agreement.

{¶ 20} A hearing was scheduled for January 19, 2023, to address the following five issues, to be followed by post-hearing briefing: (1) whether the Michael J. McCloskey Irrevocable Living Trust was entitled to one-half of the gross value of the estate or one-half of the net value of the estate; (2) how the funds distributed from a Northwestern Mutual Life Insurance Policy owned by James should be treated; (3) what deductions should be allowed if the court found that Michael's Trust is entitled to one-half of the net value of the estate; (4) whether Michael's Trust was entitled to recover interest on the amount due to it; and (5) which assets identified by the parties were liquid and which were non-liquid.

{¶ 21} Janice was the sole witness to testify at the January 19, 2023 hearing. She stated that after her father passed away in 2017, approximately $53,000 from a Northwestern Mutual Life Insurance Policy was paid into the 2014 MJM Trust. No additional money had been paid into that account since then. Janice also testified that the September 2022 MJM Trust had been funded with $100,000 as required by the

September 21, 2022 agreed order. The $100,000 was deposited as a starting amount until the parties could determine the final amount due to the trust. No additional money had been paid into the trust since then. Janice stated that there was never an indication that Michael's needs had not been met.

{¶ 22} Although Janice had identified all the assets of James's estate (probate and non-probate assets), the assets included tangible items and non-liquid assets. For example, the assets included a beer can collection, vehicles, a portion of a business, and one-half interests in out-of-state properties. At the time of the hearing, Janice had not attempted to liquidate the non-liquid assets. Janice explained that she had had conversations with the other partial owners of the out-of-state properties, but there had been no agreement as to what to do with the properties. Additionally, there was a restraining order in place that prohibited the disposition of certain business properties for any payments outside of those related to the ordinary course of business and, therefore, she could not liquidate them. The trustee of the September 2022 MJM Trust, identified as LCNB National Bank, preferred liquid assets in order to maintain the trust. Janice testified that once the issues were decided by the trial court, she was ready, willing, and able to obtain liquid assets to fund the Trust. According to Janice, her father would have wanted to split things equally between his two children.

{¶ 23} On April 12, 2023, the magistrate issued a decision finding that Michael's Trust was entitled to one-half the gross value of the estate and that no deductions were permitted. However, the magistrate emphasized that it was the trial court's duty "to interpret the meaning of the divorce decree and to leave for probate court how the trust

is to be administered under the requirements of its rules and statutes." Magistrate Decision (April 12, 2023), p. 5. The magistrate found that the separate payment of the life insurance proceeds previously paid to the 2014 MJM Trust was not within the definition of the estate in Paragraph 18 and was to be paid in addition to the money to be paid into the trust from James's estate. The magistrate declined to impose any interest, concluding that it was inappropriate and premature to do so at that time. Finally, Janice was found in civil contempt for failing to fund Michael's Trust beyond the $100,000 deposit made in September 2022.

{¶ 24} Janice filed timely objections to the magistrate's decision. On September 6, 2023, the trial court issued an order sustaining in part and overruling in part the objections. The trial court agreed that the intent of the parties and the divorce decree was to maximize benefits for Michael. However, the trial court determined that the probate court was better suited to address whether any expenses or deductions should be permitted. The trial court further determined that Janice was entitled to an offset of the life insurance proceeds from the estate as a whole. The trial court again deferred to the probate court to determine questions of distribution and deductions from the estate. Finally, the trial court declined to find Janice in contempt of court, reasoning that Linda had not proven by clear and convincing evidence that Janice had failed to comply with the court's orders. According to the court, there had been no clear directives as to the amount Janice was required to contribute because the terms of the divorce decree had been in dispute.

{¶ 25} Linda filed a timely notice of appeal from the trial court's September 6, 2023

decision, raising the following two assignments of error for our review:

1. The Trial Court erred in failing and/or refusing to interpret Paragraph 18 of the Decree and deferring jurisdiction to the Probate Court.

2. The Trial Court erred when it failed to find Janice in contempt.

## II. Paragraph 18 of the Divorce Decree

{¶ 26} In her first assignment of error, Linda argues that the trial court erred in declining to interpret the word "value" in Paragraph 18 of the divorce decree and asks this Court to reverse and remand for the trial court to interpret the ambiguous term. Janice responds that the trial court fulfilled its duties by defining "estate" as used in Paragraph 18 of the divorce decree and itemizing James's estate assets. According to Janice, the trial court cannot resolve the issue of distributions to Michael's Trust because that is reserved for the probate court.

{¶ 27} We conclude that the trial court erred by not resolving the ambiguity present in Paragraph 18 of the divorce decree. "The law is well-established that 'a court may enforce its own orders, including divorce decrees.' " *Barton v. Barton*, 2017-Ohio-980, 86 N.E.3d 937, ¶ 75 (2d Dist.), quoting *Stocker v. Stocker*, 9th Dist. Wayne No. 12CA0021, 2012-Ohio-5821, ¶ 30, citing R.C. 3105.65(B). "A postdecree show-cause motion filed by a party invokes both the inherent power of a domestic relations court to enforce its own orders and the court's continuing jurisdiction under Civ.R. 75[(J)]." *State ex rel. Soukup v. Celebrezze*, 83 Ohio St.3d 549, 551, 700 N.E.2d 1278 (1998), quoting *Blake v. Heistan*, 99 Ohio App.3d 84, 87, 649 N.E.2d 1304 (3d Dist.1994). "If there is good faith confusion over the interpretation to be given to a particular clause of a divorce

decree, the trial court in enforcing that decree has the power to hear the matter, clarify the confusion, and resolve the dispute." *Quisenberry v. Quisenberry*, 91 Ohio App.3d 341, 348, 632 N.E.2d 916 (2d Dist.1993). Accordingly, domestic relations courts may clarify ambiguous terms in divorce decrees. *Denmark v. Denmark*, 2d Dist. Montgomery No. 26438, 2015-Ohio-4292, ¶ 30.

{¶ 28} "Whether a divorce decree is ambiguous is a question of law, which an appellate court reviews de novo; if we agree that there is an ambiguity, the trial court's clarification is reviewed for abuse of discretion." (Citations omitted.) *Stevens v. Stevens*, 2d Dist. Montgomery No. 27761, 2018-Ohio-2662, ¶ 31. The term "abuse of discretion" implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 29} In the present case, the contempt motion filed in the trial court sought the enforcement and clarification of the original divorce decree, invoking the trial court's inherent power to enforce its judgment. *See Quisenberry* at 345. Throughout the filings, the parties disagreed as to the meaning of the term "value" in Paragraph 18 of the divorce decree. Whereas Linda contended that one-half the value of the estate meant one-half the *gross* value of the estate, Janice argued that one-half the value of the estate meant one-half the *net* value of the estate. "An ambiguity exists when a provision in an order or decree is reasonably susceptible of more than one meaning." *McKinney v. McKinney*, 142 Ohio App.3d 604, 609, 756 N.E.2d 694 (2d Dist.2001). Here, Janice and Linda assigned different, and reasonable, meanings to "value," thereby demonstrating ambiguity.

**{¶ 30}** Despite the ambiguity, the trial court declined to determine whether "value" meant gross value or net value. The trial court found that " 'Michael's Trust' <u>may be</u> entitled to half of the <u>gross value</u> of the estate in the event the Probate Court finds no allowable deductions, while the inverse is also true that Michael's Trust <u>may be</u> entitled to the <u>net value</u> of the estate should the Probate Court so determine. The issue is referred to the Probate Court to best determine what is allowable by statute." (Emphasis sic.) Decision and Judgment (September 6, 2023), p. 11-12.

**{¶ 31}** While we understand the domestic relations court's concern that a probate court will necessarily determine whether any deductions may apply under probate and estate law before probate assets are distributed to the beneficiaries and creditors of the estate, it is the domestic relations court that must first define "value" as that term was used in the divorce decree. Only then could the parties properly calculate how much one-half the value of the estate is. Once that amount is calculated, Paragraph 18 of the divorce decree provides that "[i]f, either party fails to designate the Michael J. McCloskey Irrevocable Living Trust as a beneficiary to one-half (1/2) of their estate*, then the Michael J. McCloskey Irrevocable Living Trust, through the trustee of said trust, shall have the right to make a claim against either parties' estate in the amount of one-half (1/2) of the value of that parties' estate*." (Emphasis added.) Thus, once the trial court defines "value," the trustee of the Michael J. McCloskey Irrevocable Living Trust has a right to make a claim against James's estate in the amount of one-half the (gross or net) value of the estate.

**{¶ 32}** We conclude that the trial court erred in failing to resolve the ambiguity in

the divorce decree.    The first assignment of error is sustained.

### III.    Contempt of Court

{¶ 33} In her second assignment of error, Linda contends that the trial court erred in failing to find Janice in contempt of court.    According to Linda, the trial court's February 19, 2021 decision placed Janice on notice to fund Michael's Trust with one-half the value of James's estate, and Janice's failure to do so constituted contempt of court.    We do not agree.

{¶ 34} "Contempt of court is defined as disobedience of an order of a court.    It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions."    *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus.    "Normally, contempt proceedings in domestic relations matters are civil in nature because their purpose is to coerce or encourage future compliance with the court's orders."    (Citations omitted.) *Fidler v. Fidler*, 10th Dist. Franklin No. 08AP-284, 2008-Ohio-4688, ¶ 11.    To obtain compliance, civil contempt is usually accompanied by conditional sanctions, i.e., the contemnor is jailed until he or she complies with the court order.    *Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, ¶ 12.

{¶ 35} " 'A prima facie case of civil contempt is made when the moving party proves both the existence of a court order and the nonmoving party's noncompliance with the terms of that order.' "    *Jenkins v. Jenkins*, 2012-Ohio-4182, 975 N.E.2d 1060, ¶ 12 (2d Dist.), quoting *Wolf v. Wolf*, 1st Dist. Hamilton No. C-090587, 2010-Ohio-2762, ¶ 4.    "The burden then shifts to the nonmoving party to establish a defense for its noncompliance."

*Wolf* at ¶ 4.

**{¶ 36}** "A finding of civil contempt requires clear and convincing evidence that the alleged contemnor has failed to comply with the court's prior orders." (Citation omitted.) *Moraine v. Steger Motors, Inc.*, 111 Ohio App.3d 265, 268, 675 N.E.2d 1345 (2d Dist.1996). "Contempt orders are reviewed for abuse of discretion, which means that the trial court must have acted unreasonably, arbitrarily, or unconscionably." *Peterson v. McAfee*, 2d Dist. Montgomery No. 28138, 2019-Ohio-731, ¶ 40, citing *State ex rel. Cincinnati Enquirer v. Hunter*, 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, ¶ 21.

**{¶ 37}** Linda's July 1, 2022 motion for contempt claimed that Janice had failed to comply with Paragraph 18 of the divorce decree, this Court's prior opinion, and the orders of the trial court of February 19, 2021 and December 22, 2021.[2] Specifically, Linda alleged that the January 2022 MJM Trust did not comply with Paragraph 18 of the divorce decree or the trial court's orders. Linda also requested Janice be held in contempt for failing to fund Michael's Trust. Prior to the hearing on Linda's contempt motion, the parties submitted that the only issue relating to the contempt motion was whether or not Janice was in contempt for failing to fund the Michael J. McCloskey Trust. Tr. 4.

**{¶ 38}** The trial court concluded that Linda had not proven by clear and convincing evidence that Janice was in contempt of the court's order. The trial court noted that the parties had challenged the terms of the divorce decree such that Janice could not be found in non-compliance where there was not a clear directive by the court to require Janice to fund the Michael J. McCloskey Trust.

---

[2] Linda's motion listed the trial court's "February 9, 2021, Decision and Judgment," which was clearly intended to be the February 19, 2021, Decision and Judgment.

{¶ 39} Based on this record, we cannot conclude that the trial court abused its discretion in finding Janice was not in contempt of court.   The plain terms of Paragraph 18 of the divorce decree instructed James and Linda to "designate the Michael J. McCloskey Irrevocable Living Trust, as beneficiary under a will and trust for one-half of the value of their estates at the time of their death."   Presumably in accordance with this paragraph, Linda executed the 2014 MJM Trust the same day the divorce decree was filed.   She likewise executed her own trust, which named Janice and the 2014 MJM Trust as equal beneficiaries.   Although modified trusts were executed at later dates, it appears Linda complied with the terms of the divorce decree: she designated the Michael J. McCloskey Irrevocable Living Trust as beneficiary under a will and trust for one-half of the value of her estate at the time of her death.   James, on the other hand, neither created a Michael J. McCloskey Irrevocable Living Trust nor designated a Michael J. McCloskey Irrevocable Living Trust as a beneficiary in either his will or his trust.   Thus, when Janice took over as executor of James's estate and trustee of James's trust, Linda filed a June 2018 motion to hold Janice, in her capacity as executor of James's estate and as trustee of James's trust, in contempt of the divorce decree.

{¶ 40} During the prior litigation in this case, the term "estate," as used in Paragraph 18 of the divorce decree, was defined as encompassing all of James's assets, both probate and non-probate.   After "estate" was defined and Janice created the January 2022 MJM Trust, Linda filed a motion for contempt for two reasons: 1) the January 2022 MJM Trust did not comply with the trial court's orders; and 2) Janice had not yet funded Michael's Trust.   Following the creation of the September 2022 MJM

Trust, the only issue to be decided regarding the contempt motion was whether Janice should be held in contempt for failing to fund the Michael J. McCloskey Trust. In that context, the parties disputed whether the value to be entered into the trust should consist of one-half of the *gross* value or the *net* value of James's estate.

{¶ 41} We concluded above that the trial court needs to define the ambiguous term "value" in Paragraph 18 of the divorce decree in order to allow the parties to properly calculate what constitutes one-half the value of James's estate. Until "value" is defined by the trial court, however, the parties are unable to determine the amount of one-half the value of James's estate. Notably, in her brief, Linda herself cannot define a specific amount for which Janice must fund the Michael J. McCloskey Trust except to say that it is within an approximate range depending on how "value" is defined by the trial court.

{¶ 42} Further, we note that neither the divorce decree nor any of the trial court's orders required Janice to deposit a specific amount of money or any specific property into the Michael J. McCloskey Trust. The plain language of Paragraph 18 instructed the parties to "designate the Michael J. McCloskey Irrevocable Living Trust, as beneficiary under a will and trust for one-half of the value of their estates at the time of their death." While James clearly did not do this, Janice complied with the trial court's order of December 22, 2021, when she created the September 2022 MJM Trust. Because James is deceased, neither his will nor his trust can be modified to designate any of the various trusts as a beneficiary in compliance with Paragraph 18 of the divorce decree.

{¶ 43} Linda's reliance on the trial court's February 19, 2021 order to hold Janice in contempt is misplaced. Nothing in that order instructed Janice to fund the Michael J.

McCloskey Trust. At best, the trial court acknowledged that "[t]he magistrate found it 'appropriate to order Janice to comply with the terms of the divorce decree *and through probate court* effectuate the meaning of Paragraph 18 as determined by this court herein.' " (Emphasis added.) Decision and Judgment (February 19, 2021), p. 11.

**{¶ 44}** Accordingly, we cannot conclude that the trial court abused its discretion when it found that holding Janice in contempt of court would be improper where no clear directive from the court required Janice to fund the Michael J. McCloskey Trust.

**{¶ 45}** The second assignment of error is overruled.

## IV. Conclusion

**{¶ 46}** Having sustained the first assignment of error, we will reverse the trial court's judgment in part and remand this matter for the trial court to define the term "value" as contemplated in Paragraph 18 of the divorce decree. In all other respects, the trial court's judgment will be affirmed.

. . . . . . . . . . . .

WELBAUM, J. and HUFFMAN, J., concur.